222 N.J. Super. 441 (1987)
537 A.2d 692
TOWNSHIP OF MONTCLAIR, ET AL., PLAINTIFFS-APPELLANTS,
v.
ROBERT E. HUGHEY, ET AL., DEFENDANTS-APPELLANTS.
THE TOWNSHIP OF JACKSON, PLAINTIFF-RESPONDENT,
v.
THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-APPELLANTS.
OCEAN COUNTY BOARD OF CHOSEN FREEHOLDERS, PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1987.
Decided October 20, 1987.
*442 Before Judges ANTELL, DEIGHAN and LANDAU.
*443 Timothy S. Haley argued the cause for appellant Township of Montclair (Gordon, Gordon & Haley, attorneys; Timothy S. Haley, on the brief).
Richard F. Engel, Deputy Attorney General, argued the cause for appellant Department of Environmental Protection (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Richard F. Engel, on the brief).
Thomas G. Gannon argued the cause for respondent Township of Jackson (Hiering and Hoffman, attorneys; John C. Sahradnik and Thomas G. Gannon, on the brief).
John C. Sahradnik argued the cause for respondent Ocean County Board of Chosen Freeholders (Berry, Kagan, Privetera and Sahradnik, attorneys; Thomas G. Gannon and John C. Sahradnik, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
The narrow question presented on this appeal is whether these consolidated actions against a state administrative agency were properly brought in the Law and Chancery Divisions or whether plaintiffs may find their relief exclusively in the Appellate Division.
Invoking his emergency powers under the Civil Defense and Disaster Control Act, N.J.S.A. App. A:9-30 et seq., on December 2, 1983, Governor Kean signed Executive Order No. 56. Among other things, this authorized and directed the New Jersey Department of Environmental Protection (hereinafter "DEP") to take emergency measures necessary to protect the public health, safety and welfare from the hazards of radium, radon and other radioactive decay products present in the Borough of Glen Ridge and the Town of Montclair. These elements were found in dangerous concentrations in the soil under and surrounding certain residential structures within the named municipalities. Radon is a gas produced by the breakdown *444 of radioactive substances. It is believed to be a significant causative factor in the etiology of lung cancer when contained within enclosed areas, and it was determined that it had penetrated certain houses in volumes considered seriously threatening to the health of the occupants.
By August 1985 some 15,000 barrels of contaminated soil, weighing in the aggregate approximately 5,500 tons, had been excavated from the affected properties. Thereafter, DEP's efforts to find a permanent storage site both within and without the State of New Jersey were resisted by local officials and residents and the removal project stalled. On November 8, 1985 the Town of Montclair sued in the Chancery Division of the Superior Court in Essex County for an injunction requiring DEP to remove the radioactive soil, of which approximately 10,000 barrels had already been transferred to the Town of Kearny in Hudson County for temporary storage. On March 4, 1987 an order was entered in the Chancery Division directing that removal of the barrels commence not later than May 15, 1987, later extended to June 15, 1987, and that it "continue expeditiously thereafter until such time as all of the barrels are removed." The theory of the Montclair action was that evacuation of the residents from their houses and the presence of 5,000 barrels of contaminated soil on their property combined to create a police and fire hazard which resulted in a private and public nuisance.
On June 4, 1987 DEP publicly announced by Administrative Order No. EO56-2 that it would comply with the court-mandated deadline by removing the barrels from Montclair to the Colliers Mills Wildlife Area within the Preservation Area of the Pinelands National Reserve. This site is designated in the Pinelands Protection Act, N.J.S.A. 13:18A-1 et seq., and the National Parks and Recreation Act of 1978, 16 U.S.C.A. §§ 471i, 502, as an ecologically and environmentally sensitive area. Alleging that the proposed action constituted a threat to the environment and to the public health, safety and welfare, the Township of Jackson and the Ocean County Board of *445 Chosen Freeholders brought consolidated actions in the Superior Court, Law Division, in Ocean County to enjoin DEP from implementing its administrative order. A temporary restraining order was signed by the Assignment Judge of Ocean County and the matter set down for preliminary hearing on June 9, 1987. Thereafter an order was signed on June 9, 1987 by the Assignment Judge of Essex County consolidating the two actions in Essex County. That order also partially remands the matter to Ocean County for a determination of the "appropriateness of the proposed site in Colliers Mills, Jackson Township for the temporary storage of 15,000 barrels of radium contaminated soil now stored in Montclair...." It also denies DEP's motion for transfer of the proceeding to the Appellate Division. On June 16, 1987 we granted the motions of DEP and the Town of Montclair for leave to appeal from that denial. We further ordered that pending disposition of the appeal, DEP was restrained from transporting any amount of the contaminated soil to the Colliers Mills Wildlife Management Area and from preparing the site for storage thereof. On July 8, 1987 the Supreme Court dissolved our injunction, but remanded the matter to this court for a determination on the merits of the appeal.
We parenthetically observe that although there has been no restraint upon temporarily storing the barrels at Colliers Mills since the date of the Supreme Court order, DEP has not taken this course of action. Instead, as we have learned at oral argument, it has retained a private contractor to detoxify the contaminated soil and dispose of it eventually in the State of Washington. Superficially, it therefore appears that the issue raised has become moot. However, the events prologue to this appeal which have thwarted DEP's previous attempts to comply with the Chancery Division's order, and which we have not attempted to summarize, suggest that consummation of DEP's present plan is by no means certain. Thus, a judicial determination of DEP's intention to keep the Colliers Mills site as a viable possibility for temporary storage may well be necessary. For *446 this reason and because of the public importance of the question presented we will consider the merits of the appeal. Bd. of Ed., E. Brunswick Tp. v. Tp. Council, E. Brunswick, 48 N.J. 94, 109 (1966).
DEP's contention that plaintiff's claims may be heard only in the Appellate Division is based upon R. 2:2-3(a)(2) which provides that appeals may be taken as of right to the Appellate Division "to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer...." The rule has been interpreted to mean that the mode of review so provided is exclusive. Pascucci v. Vagott, 71 N.J. 40, 51-52 (1976); Central R.R. Co. v. Neeld, 26 N.J. 172, 184-185 (1958). However, two limitations upon its applicability have emerged. The first is where the authority of the state administrative agency is limited to a particular locality. Baldwin Constr. Co. v. Essex County Board of Taxation, 27 N.J. Super. 240, 242 (App.Div. 1953). The other is where the proposed administrative action has not been preceded by the creation in the agency of a record which is amenable to appellate review. Frapaul Constr. Co. v. Transportation Dep't of N.J., 175 N.J. Super. 84 (App.Div. 1980); Pfleger v. N.J. State Highway Dept., 104 N.J. Super. 289 (App.Div. 1968); Colon v. Tedesco, 125 N.J. Super. 446 (Law Div. 1973). This case falls within the latter class of exceptions.
Pfleger, supra, is closely analogous. There, plaintiff filed an amended complaint to compel the Department of Transportation to institute condemnation proceedings on the claim that a highway project was going to cause serious flooding of his property. Because the suit was brought against a state administrative agency, the Chancery Division transferred the matter to the Appellate Division under R.R. 4:88-8, the then governing rule of practice and procedure. However, we reversed that determination, concluding that transfer should properly have been made to the Law Division. We left no *447 doubt that for us to entertain the action where no proceedings were taken before the agency and no record presented for review would be incompatible with the function of a reviewing court. Id. 104 N.J. Super. at 292. DEP argues that the decision in that case turned, not on the lack of an administrative hearing and a record for review, but upon the fact that no machinery to institute condemnation proceedings existed within the Department of Transportation and therefore such relief could only have been obtained in the Law Division. We conclude, however, that this was there noted by us only as a factor which explains why there had been no hearing and that it was the absence of a record which compelled our conclusion in that case.
In Frapaul Const. Co., supra, we dismissed an appeal from the Department of Transportation's Claims Committee's denial of a contract claim, holding that such an action was originally cognizable in the Law Division. We explained that appeals to the Appellate Division from final decisions of state agencies were a substitute for the common law writ of certiorari, which "was predominantly a form of appellate review to correct errors of law apparent on the face of the record of proceedings in a lower judicial or quasi-judicial tribunal." Id. 175 N.J. Super. at 90. We held that since the Claims Committee did not provide "a judicial type of hearing such as is necessary to adjudicate a construction contract controversy," id. at 91, there was no record to review and, as in Pfleger, supra, the matter had to be remanded to the Law Division.
In Colon v. Tedesco, supra, it was held that an action to compel the Department of Labor to institute proceedings to have a migrant worker's camp declared a nuisance was properly brought in the Law Division. As Judge Horn, writing for the Law Division said in his discussion,
... R. 2:2-3(a)(2) was promulgated, among other reasons, for the purpose of providing a speedy review of a proceeding conducted within the state administrative agency itself and involving parties who are given an opportunity to be *448 heard. In such cases a record is made on the basis of which the Appellate Court's review will result in a definitive determination. [at 452].
That R. 2:2-3(a)(2) contemplates appellate review only of administrative actions of a quasi-judicial or quasi-legislative nature based on a record is also demonstrated by the Supreme Court's comments on its predecessor, R.R. 4:88-8, in Carls v. Civil Service Commission of N.J., 17 N.J. 215, 219-220 (1955). See also McKenna v. N.J. Highway Authority, 19 N.J. 270, 276 (1955). Cases cited by DEP in support of its position herein are of such a nature. This case is not. It was brought to halt an alleged threatened breach of public and private rights, not to review an administrative proceeding. Disposition thereof calls for the exercise of trial court functions such as the gathering of evidence, finding of facts and the application of legal conclusions. These are not the proper concerns of an appellate court, and hence, we conclude that the matters in controversy were properly instituted in the Law and Chancery Divisions.
Affirmed.