227 N.J. Super. 99 (1988)
545 A.2d 823
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE PUBLIC ADVOCATE, RESPONDENT.
NEW JERSEY DEPARTMENT OF THE PUBLIC ADVOCATE, RESPONDENT,
v.
NEW JERSEY MEDICAL MALPRACTICE REINSURANCE ASSOCIATION, APPELLANT.
INSURANCE SERVICES OFFICE, INC., APPELLANT,
v.
NEW JERSEY DEPARTMENT OF THE PUBLIC ADVOCATE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1988.
Decided August 9, 1988.
*103 Before Judges MICHELS, SHEBELL and GAYNOR.
Thomas P. Weidner argued the cause for appellant State Farm Mutual Automobile Insurance Company (Jamieson, Moore, Peskin & Spicer, attorneys; Thomas P. Weidner, of counsel and on the brief; Edward McCardell, on the brief).
Hugh P. Francis argued the cause for appellant New Jersey Medical Malpractice Reinsurance Association (Francis & Berry, attorneys; Hugh P. Francis, of counsel and on the brief).
Elizabeth J. Sher argued the cause for appellant Insurance Services Office, Inc. and as amicus curiae in the State Farm appeals (Pitney, Hardin, Kipp & Szuch, attorneys; Clyde A. Szuch, David M. Fabian and Elizabeth J. Sher, on the briefs).
*104 Richard E. Shapiro, Director, Division of Public Interest Advocacy, argued the cause for respondent in the State Farm appeals (Alfred A. Slocum, Public Advocate, attorney; Richard E. Shapiro, Oliver B. Quinn, General Counsel/Chief of Staff and Donna Grozuczak, Assistant Deputy Public Advocate, on the brief).
Richard E. Shapiro, Director, Division of Public Interest Advocacy, argued the cause for respondent in the New Jersey Medical Malpractice Reinsurance Association appeal (Alfred A. Slocum, Public Advocate, attorney; Richard E. Shapiro, on the brief).
Ellen B. Maughan, Assistant Deputy Public Advocate, argued the cause for respondent in the Insurance Services Office, Inc. appeals (Alfred A. Slocum, Public Advocate, attorney; Richard E. Shapiro, Director, Division of Public Interest Advocacy, of counsel; Tracey Thayer, Assistant Deputy Public Advocate, and Ellen B. Maughan, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
State Farm Mutual Automobile Insurance Company (State Farm), Insurance Services Office, Inc. (ISO) and New Jersey Medical Malpractice Reinsurance Association (NJMMRA) are the various appellants in these consolidated appeals seeking in certain of the appeals review of Law Division judgments which enforced assessments of counsel fees and expenses issued pursuant to N.J.S.A. 52:27E-19b by the Division of Rate Counsel of the Department of the Public Advocate for representing the public interest in what the Public Advocate alleges were proceedings for authority to increase or change the charges for insurance initiated at various times by the appellants. ISO and State Farm also appeal directly to this court from certain Rate Counsel assessments.
There are two issues common to these appeals. The first concerns the authority of the Division of Rate Counsel to *105 charge fees and expenses. Appellants assert that the mere filing of rates or forms or the conveying of information concerning the need for surcharges as occurred in these various matters did not constitute the initiation of "a proceeding" by the appellants "to increase or change the charges for insurance" within the contemplation of N.J.S.A. 52:27E-19b. The second issue concerns the mechanism for enforcement of the Rate Counsel's assessments and the means by which appellants can question the amount of the assessment.

THE INSURANCE SERVICES OFFICE, INC. CASES
ISO is a nonprofit insurance rating organization licensed under N.J.S.A. 17:29A-2 to prepare and file insurance rates and policy forms with the Department of Insurance on behalf of its member insurers. ISO was assessed for fees and costs by Rate Counsel for Rate Counsel's intervention in some 25 different rate and form filings made by ISO concerning private passenger automobile, homeowners and commercial automobile insurance from 1982 to 1985.
Although ISO paid Rate Counsel over $180,000.00 in settlement of these assessments in 1984 and 1985, disputes arose over three different types of bills which could not be resolved through negotiation. ISO refused to pay certain bills related to Rate Counsel's intervention in commercial automobile insurance rate filings on the ground that the filing of a deregulated commercial automobile insurance rate pursuant to N.J.S.A. 17:29AA-5 with the Department of Insurance is to be accomplished within 30 days after its effective date and does not constitute a "proceeding initiated by [a rating organization] ... for authority to increase or change the charges for insurance" which would entitle Rate Counsel to compensation under N.J.S.A. 52:27E-19b.
The second type of disputed bill concerns Rate Counsel's review of certain insurance policy form filings with the Department of Insurance. ISO contends that Rate Counsel has neither *106 the authority to intervene nor the right to seek compensation where such filings concern changes in forms only and do not involve the fixing of rates, rate increases or rate changes as specified in N.J.S.A. 52:27E-18 and 19b. In the third category, ISO objected to a number of bills which it acknowledged an obligation to pay, but which are disputed as being unreasonable in amount.
When ISO failed to make payment on a total of approximately $70,000 in Rate Counsel bills, two complaints were filed in the Law Division for judgment on the outstanding debt. The first action sought judgment in the amount of $14,870.00. The second sought compensation for billings for legal fees and expenses in the amount of $55,963.68.
The two actions were consolidated and the Public Advocate then filed a motion for summary enforcement under R. 4:67-6 or, in the alternative, summary judgment. ISO opposed the motion and filed a cross-motion for partial summary judgment. The Law Division judge entered a Final Judgment requiring ISO to pay Rate Counsel $35,177.50, representing compensation for its intervention in the commercial auto insurance rate filings and policy form filings which ISO claimed were outside the scope of N.J.S.A. 52:27E-18 and 19b.
The trial court further ruled that jurisdiction to challenge the validity, basis and reasonableness of the Public Advocate's final determination that such compensation was due and owing resided exclusively in the Appellate Division. Accordingly, the issue of whether Rate Counsel was entitled to compensation for intervening in such filings under N.J.S.A. 52:27E-18 and 19b was transferred to this court pursuant to R. 1:13-4(a) and R. 2:2-3(a)(2). With respect to those bills which were disputed by ISO as unreasonable in amount or previously settled, the court found that factual issues existed necessitating resolution by summary trial. ISO, however, settled this aspect with Rate Counsel prior to trial.
*107 Subsequently, however, Rate Counsel submitted additional bills to ISO for legal expenses incurred in prosecuting the summary enforcement proceedings before the Law Division. ISO filed a notice of appeal directly from those bills. This appeal was consolidated with the matter originally transferred from the Law Division. ISO filed an amended notice of appeal for two additional bills received on May 4 and 26, 1987, a second amended notice of appeal for two additional bills submitted by the Public Advocate on October 16, 1987, a third amended notice of appeal to include bills submitted by the Public Advocate on November 19, 1987, a fourth amended notice of appeal for bills dated December 18, 1987, a fifth amended notice of appeal for bills dated January 25, 1988, and a sixth amended notice of appeal for bills dated February 24, 1988. We granted ISO's motion to file a seventh amended notice of appeal for bills dated March 18, 1988.

THE STATE FARM CASES
On March 29, August 30, October 31, and December 20, 1984, and on February 22, 1985, Rate Counsel forwarded bills to State Farm for payment pursuant to N.J.S.A. 52:27E-19b. Not having received payment on any of the bills within the 30-day period mandated by N.J.S.A. 52:27E-19c, Rate Counsel filed a complaint against State Farm in the Superior Court, Law Division, on June 4, 1985. The complaint sought judgment in the amount of $27,662.60 plus interest, the combined total of the five bills. The complaint alleged that these bills represented Rate Counsel's compensation and expenses for work which it performed in furtherance of the public interest with regard to Department of Insurance filings identified as Rate Counsel File Nos. 84-PPA-11 and 79-I-153.
Following oral argument on a motion to compel more specific answers to interrogatories in the Law Division, the court issued an oral opinion denying the motion since it found that the information sought in the interrogatories was not relevant to *108 the Law Division action, which the court characterized as being in the nature of a summary enforcement proceeding under R. 4:67-6. The judge concluded that State Farm could only challenge the reasonableness of the bills by appealing Rate Counsel's assessments, which he characterized as final administrative determinations, to the Appellate Division. By notice of motion dated October 31, 1986, Rate Counsel moved pursuant to R. 4:67-6 for summary enforcement of the five bills, which it characterized as agency determinations. Rate Counsel also moved for summary enforcement of seven additional bills which it sent to State Farm for payment subsequent to the drafting of the complaint. These latter bills, dated March 22, 1985 and February 6, March 28, May 8, June 18, July 23 and August 20, 1986, were for fees and expenses incurred by Rate Counsel in representing the public interest with regard to the Department of Insurance filing identified as Rate Counsel File No. 84-PPA-11.
Rate Counsel further maintained that 11 of the bills sent to State Farm reflected fees and expenses incurred in a proceeding initiated by State Farm before the Department of Insurance identified as Rate Counsel File No. 84-PPA-11. The remaining bill represented fees and expenses incurred by Rate Counsel in connection with an appeal by eight insurance companies from an order of the Commissioner of Insurance rendered in a Department of Insurance filing identified as Rate Counsel File No. 79-I-153, otherwise known as the Consolidated Automobile Classification Proceeding. Since State Farm was one of the eight companies that filed the appeal, one-eighth of Rate Counsel's expenses incurred in connection with the appeal was allocated to State Farm.
With regard to the aforesaid Consolidated Automobile Classification Proceeding, State Farm submitted a filing to the Department of Insurance on April 11, 1978, seeking an overall rate increase of 21.4% for its private passenger automobile insurance policyholders. State Farm proposed a distribution scheme which allocated the premium to individual policyholders based *109 in part on the age, sex, marital status and geographic location of the driver. Rate Counsel intervened in this proceeding to represent the public interest.
The Commissioner of Insurance apparently issued an order severing various rate classification issues presented in State Farm's filing and consolidating them with other pending rate filings that raised similar issues. The consolidated hearing, in which State Farm participated and defended its existing classification system, ran for approximately 11 months. Rate Counsel participated in this proceeding and sent statements of compensation and expenses to all filers who participated therein. The Commissioner issued an order in the proceeding requiring State Farm and the other filers to make specified changes to their rate classification methodologies, including their driver classifications and geographic rating territories. State Farm and seven other rate filers filed a notice of appeal with this court from the Commissioner's order.
Rate Counsel and State Farm executed a "Memorandum of Understanding," wherein State Farm agreed "to pay its proportionate share of the expenses which have been or will be incurred by the Public Advocate pursuant to N.J.S.A. 52:27E-19 in connection with the Consolidated Automobile Insurance Classification and Related Methodologies Proceeding which was conducted by the Department." However, during the pendency of the appeal, the New Jersey Automobile Insurance Reform Act of 1982, N.J.S.A. 17:29A-33 et seq., was enacted, which directed all automobile insurance carriers to implement certain changes to their classification and rating system. State Farm and the other appellants claimed that the Reform Act rendered the Commissioner's order moot and that we should therefore set aside the order. On May 23, 1985, we dismissed the appeal and remanded the matter to the Department of Insurance for further consideration.
With regard to Rate Counsel File No. 84-PPA-11, State Farm submitted a filing to the Department of Insurance dated *110 October 19, 1983, which was subsequently superseded by another State Farm filing dated December 21, 1983. The filing concerned rates applicable to private passenger automobile insurance. It proposed changes in the manner in which State Farm determined rates for different driver classes, geographic territories and the manner in which State Farm distributed company expenses among policyholders. Rate Counsel intervened in the proceeding and hired a consultant to analyze the filing and prepare a report, which was subsequently submitted to the Department of Insurance.
State Farm's attorney submitted a certification in opposition to Rate Counsel's motion for summary enforcement in which he denied that State Farm initiated either of the proceedings previously described.
With regard to the Consolidated Automobile Classification Proceeding, Rate Counsel File No. 79-I-153, State Farm maintains it filed for a rate increase in April 1978, but did not seek to change its basic methodology for determining an individual insured's premium based upon age, sex, marital status and territory. The Commissioner approved an overall rate increase of 12% in December 1978. State Farm asserts that since the Commissioner ordered State Farm, along with all other insurers doing business in New Jersey, to participate in certain hearings to determine whether the traditional methods utilized to charge individual insureds were proper, State Farm did not initiate these hearings.
With regard to Rate Counsel File No. 84-PPA-11, State Farm maintained that this filing was made solely because State Farm was compelled to do so by operation of a state statute which altered the manner in which State Farm allocated the premiums among its insureds and that State Farm did not "initiate" this proceeding since it was mandated by law to make the filing.
Oral argument was conducted on the motion for summary enforcement on December 19, 1986. State Farm argued *111 against summary enforcement, contending that the bills were not orders or determinations entered by a state administrative agency within the meaning of R. 4:67-6(a). It also argued that before obtaining a judgment for summary enforcement, Rate Counsel should be required to produce evidence with regard to who initiated the rate filings and the manner in which Rate Counsel's bills were calculated.
The motion judge granted the motion for summary enforcement, finding that the bills were orders or determinations entered by a state administrative agency and that the validity of the bills was not justiciable in a summary enforcement proceeding. A final judgment was entered on January 7, 1987, directing State Farm to transmit a check in the amount of $32,222.60 to Rate Counsel, which State Farm has paid under protest. The judgment stated that jurisdiction to challenge the validity and reasonableness of the bills, including the issue of who initiated the underlying proceedings, resided exclusively with the Appellate Division.
Rate Counsel also sent State Farm several bills which were not included in its complaint or motion for summary enforcement. These bills, dated September 26, October 24, November 25 and December 23, 1986, were for legal services and the expense of experts employed by Rate Counsel in representing the public interest in proceedings identified as Rate Counsel File Nos. 84-PPA-11, previously discussed, and 84-PPA-68. Rate Counsel File No. 84-PPA-68 relates to a filing by State Farm with the Department of Insurance in April 1984, containing revised rate schedules so as to comply with the Tort Threshold Law. Rate Counsel intervened on behalf of the public interest and hired an actuarial consulting firm to assist in its review and analysis of the case. A report prepared by the consultant was filed with the Department of Insurance and the matter was thereafter transferred to the Office of Administrative Law where hearings were conducted. The total amount of the four bills was $43,937.92. State Farm filed four separate timely notices of appeal with this court from each of the bills. *112 In a statement of proceedings in lieu of transcript accompanying each notice of appeal, State Farm asserted that it was disputing the reasonableness of the bills and the assertion that it had initiated the proceedings on which the bills were based. State Farm further explained that while it did not feel that the bills were final decisions of a state administrative agency, it was appealing pursuant to R. 2:2-3(a)(2) in order to protect its rights.
Subsequent to receiving the bills involved in the four additional notices of appeal, State Farm received two more bills from Rate Counsel for its representation of the public interest in two of the proceedings previously described, Rate Counsel File Nos. 84-PPA-11 and 84-PPA-68. These bills, dated February 9 and 19, 1987, totaled $9,677.25. State Farm filed an amended notice of appeal with this court on March 12, 1987 from these two additional bills.
Then, after receiving the bills which were the subject of the above-mentioned notices of appeal and certifications, State Farm received additional bills from Rate Counsel for its representation of the public interest in Rate Counsel File Nos. 84-PPA-11 and 84-PPA-68. One of the bills related to a new proceeding, referred to as Rate Counsel File No. 88-PPA-2. Specifically, Rate Counsel issued: (1) two bills dated March 24, 1987, in the amounts of $3,334.50 and $345, on account of which State Farm filed a second amended notice of appeal on May 8, 1987; (2) two bills dated April 30, 1987, in the amounts of $2,558.75 and $86.25, on account of which State Farm filed a third amended notice of appeal on June 4, 1987; (3) a bill dated May 22, 1987, in the amount of $3,404.30, on account of which State Farm filed a fourth amended notice of appeal on June 25, 1987; (4) two bills dated June 19, 1987, in the amounts of $172.50 and $4,916.25, on account of which State Farm filed a fifth amended notice of appeal on July 14, 1987; (5) two bills dated August 10, 1987, in the amounts of $661.25 and $2,127.50, on account of which State Farm filed a sixth amended notice of appeal on August 27, 1987; (6) two bills dated September 24, *113 1987, in the amounts of $874 and $1,213.61, on account of which State Farm filed a seventh amended notice of appeal on October 22, 1987; (7) two bills dated October 16, 1987, in the amounts of $57.50 and $1,667.50, on account of which State Farm filed an eighth amended notice of appeal on December 4, 1987, and (8) two bills dated November 19, 1987, in the amounts of $2,156.25 and $460, on account of which State Farm filed a ninth amended notice of appeal on December 4, 1987. Thereafter, Rate Counsel issued: (1) two bills dated December 18, 1987, in the amounts of $57.50 and $115, as a result of which State Farm filed a tenth amended notice of appeal on February 2, 1988; (2) two bills dated January 25, 1988, in the amounts of $115 and $7,360, as a result of which State Farm filed an eleventh amended notice of appeal on March 8, 1988, and (3) a bill dated February 24, 1988, in the amount of $5,907.66, as a result of which State Farm filed a twelfth amended notice of appeal on March 30, 1988. The fees and expenses involved in the State Farm appeals presently approximate $125,000.

THE N.J. MEDICAL MALPRACTICE REINSURANCE ASSOCIATION CASES
NJMMRA was established by the Legislature pursuant to the Medical Malpractice Liability Insurance Act, N.J.S.A. 17:30D-1 et seq. Membership in NJMMRA consists of those insurers authorized and engaged in writing within this State, on a direct basis, personal injury and property damage liability insurance, with certain limited exceptions. N.J.S.A. 17:30D-4. NJMMRA is an unincorporated, nonprofit association established to assure that medical malpractice liability insurance is readily available to licensed medical practitioners and health care facilities. N.J.S.A. 17:30D-2a and -4. NJMMRA is required to reinsure medical malpractice liability insurance policies issued by certain providers and it is permitted to write such policies on a direct basis. N.J.S.A. 17:30D-2a.
*114 The Legislature created the New Jersey Medical Malpractice Reinsurance Recovery Fund (Fund) to reimburse NJMMRA for any deficit sustained in its operation. N.J.S.A. 17:30D-9. The Commissioner is required to establish additional premium charges for medical malpractice liability insurance policies for the purpose of providing monies necessary to establish the Fund. N.J.S.A. 17:30D-10.
By letter dated April 2, 1984, NJMMRA advised the Commissioner that it had a severe deficit and was in immediate danger of running out of funds. It urged the Commissioner to establish additional premium surcharges for medical malpractice liability insurance policies pursuant to N.J.S.A. 17:30D-10. A report prepared by NJMMRA's actuaries accompanied the letter and revealed that NJMMRA's 1983 year-end deficit was $41 million and that the Fund would run out of money to satisfy claims as of December 1987.
Representatives of NJMMRA met with the Commissioner to review its deficit position and to furnish additional information. Additional information in connection with NJMMRA's request for the imposition of a surcharge and an additional report prepared by NJMMRA's actuaries were thereafter supplied by letter of June 5, 1984. NJMMRA's chairman stated in the letter that he was expressing no opinion as to the amount of the surcharge since the Legislature had delegated the responsibility to establish the categories of medical malpractice liability insureds to be surcharged and the amount thereof to the Commissioner. However, he strongly urged that surcharges be established as soon as possible in order to revitalize the Fund.
The Director of Legislative and Regulatory Affairs of the Department of Insurance advised NJMMRA's attorney that, in accordance with N.J.A.C. 11:1-2.5, NJMMRA must file with the Department of the Public Advocate all documents submitted to the Department of Insurance in connection with NJMMRA's application for the fixing of a surcharge. In accordance with this directive, NJMMRA's attorney forwarded to the Public *115 Advocate a copy of NJMMRA's June 5, 1984 letter. In a letter dated July 17, 1984, which accompanied this enclosure, NJMMRA's attorney stated that NJMMRA's "request for a surcharge does not constitute a rate filing since the surcharge prerogative rests with the Commissioner rather than the Association." Rate Counsel advised NJMMRA's attorney and the Commissioner that it had decided to intervene in the matter.
In September 1984, in accordance with N.J.S.A. 52:27E-17 and -19, Rate Counsel retained the actuarial services of Phillip K. Stern, Inc. to assist in its review and analysis of the request for the imposition of a surcharge.
On October 31, 1984, pursuant to N.J.S.A. 52:27E-19, Rate Counsel sent NJMMRA an itemized bill for legal services in the amount of $3,990 incurred between August 2 and October 10, 1984, in connection with the request for the imposition of a surcharge. Payment was requested within 30 days in accordance with N.J.S.A. 52:27E-19c.
On January 23, 1985, pursuant to N.J.S.A. 52:27E-19, another itemized bill in the amount of $6,671.99 for legal services incurred by Rate Counsel was sent together with a bill for fees and expenses incurred by Rate Counsel's actuary. Again, payment was requested from NJMMRA within 30 days.
After conferences and discovery proceedings concerning the request for the imposition of a surcharge were completed, Rate Counsel submitted its report and recommendations to the Department of Insurance and NJMMRA in April 1985. Rate Counsel noted that the data supplied in support of the requested surcharge were unreliable and that, absent adequate support, the request should not be granted. It recommended that more reliable data be obtained and verified before any surcharge was imposed.
On June 4, 1985, Rate Counsel filed a complaint in the Law Division, wherein it sought judgment in the amount of $10,661.99, which it had previously billed NJMMRA for its fees, costs and expenses incurred in connection with the work performed *116 in representing the public interest in connection with the continuing application. NJMMRA's answer contained several separate defenses including the allegation that no proceeding or contested matter existed which permitted Rate Counsel's participation or intervention pursuant to N.J.S.A. 52:27E-19.
Thereafter, Rate Counsel filed a motion for summary enforcement, pursuant to R. 4:67-6, of its agency determination that NJMMRA owed $10,661.99 for the fees and expenses incurred in representing the public interest in the rate filing and, in the alternative, sought summary judgment.
NJMMRA argued against summary enforcement, contending that the bills were not orders or determinations entered by a state administrative agency within the meaning of R. 4:67-6(a). It also argued that evidence should be produced in the trial court pertaining to the manner in which the bills were calculated, so that this court would have a record on which to base its review of the bills' validity. In addition, it maintained that it was not responsible for the payment of fees and expenses incurred by Rate Counsel in representing the public interest because NJMMRA did not initiate a proceeding for authority to increase insurance charges within the meaning of N.J.S.A. 52:27E-19b.
The Law Division judge found that there was no need for Rate Counsel to produce additional evidence in the trial court, since the bills were accompanied by invoices which itemized the manner in which the charges were calculated. The motion for summary enforcement was granted. The Law Division also transferred the matter to this court for consideration of NJMMRA's challenge to the applicability of N.J.S.A. 52:27E-19, since it found that jurisdiction resided exclusively with this court.
We granted NJMMRA's motions for permission to file a notice of appeal nunc pro tunc and for a stay of the trial court's judgment pending appeal.

*117 LEGAL BACKGROUND OF CONTROVERSIES
The Public Advocate Act, N.J.S.A. 52:27E-1 et seq., authorizes the Public Advocate, through the Division of Rate Counsel, to "represent and protect the public interest ... in proceedings before and appeals from any State department, commission, authority, council, agency or board charged with the regulation or control of any business, industry or utility regarding a requirement that the business, industry or utility provide a service or regarding the fixing of a rate, toll, fare or charge for a product or service." N.J.S.A. 52:27E-18. The Act provides for the payment of the fees and expenses incurred by Rate Counsel for such representation. N.J.S.A. 52:27E-19. Specifically, N.J.S.A. 52:27E-19b, the provision relied on by Rate Counsel in forwarding appellants the itemized bills for legal services and actuary fees and expenses, provides the following:
Whenever the Division of Rate Counsel represents the public interest in a proceeding initiated by an insurance company or nonprofit service plan subject to Title 17 of the Revised Statutes or Title 17B of the New Jersey Statutes for authority to increase or change the charges for insurance, the director shall send each insurer, nonprofit service plan or rating organization involved in such proceeding a statement of the compensation and expenses of counsel, experts and assistants employed by the division in such proceeding, together with an appropriate allocation to such insurance company, nonprofit service plan or rating organization of its fair share thereof. [Emphasis supplied].
The Act requires that "[a]ll assessments or statements of compensation and expenses shall be paid by the business, industry or utility to the Department of the Treasury within 30 days after the date of assessment." N.J.S.A. 52:27E-19c. The Public Advocate Act does not provide a mechanism through which an assessment can be questioned as to its reasonableness nor does it spell out how collection is to be enforced.
Prior to the Act's promulgation, the Attorney General was authorized to employ legal counsel, experts and assistants on a temporary basis to protect the public interest in proceedings instituted by a public utility before the Board of Public Utility Commissioners for authority to increase its rates. N.J.S.A. *118 48:2-31.1. The Attorney General was authorized to send an itemized statement to the public utility setting forth the amount of the compensation and expenses of the legal counsel, experts and assistants employed by the Attorney General in such proceedings. N.J.S.A. 48:2-31.2(a). If the public utility questioned the reasonableness of the statement, it was required to file a petition with the Board of Public Utility Commissioners within 20 days after receipt of the statement, setting forth its objections. N.J.S.A. 48:2-31.2(b). Thereafter, the board was required to hold a hearing and make a determination as to the reasonableness of the amount of the item in dispute. This determination was subject to judicial review in the same manner as any final decision or action of a state administrative agency. N.J.S.A. 48:2-31.2(b) and (c). However, N.J.S.A. 48:2-31.1 and 31.2 were repealed by L. 1974, c. 27, § 50, and the powers to employ legal counsel, experts and assistants to protect the public interest were transferred to the Division of Rate Counsel. N.J.S.A. 52:27E-20.
Our review of the legislative history of the Public Advocate Act has failed to reveal any indication as to why the Legislature did not provide a means by which the reasonableness of the amount of any item set forth in the statement can be questioned. Assembly Bill No. 1297, which died in Committee, was introduced on February 15, 1974, and pre-dated the bill which was eventually adopted as the Public Advocate Act. It would have allowed a business, industry or utility to question the reasonableness of the amount of any item set forth in the statement of compensation and expenses prepared by the Division of Rate Counsel by filing a petition with the department, commission, agency or board before which the rate proceeding was conducted. The department, commission, agency or board would have been required to hold a hearing and issue a determination. This determination would have been subject to judicial review in the same manner as any final decision or action of a state administrative agency.
*119 Assembly Bill No. 1409, which was introduced on March 18, 1974, was eventually adopted as the Public Advocate Act after amendment by both the Assembly and the Senate. There was never any provision in this bill providing a mechanism through which the reasonableness of the amount of any item set forth in the statement could be disputed. The only mention of such a mechanism in the entire history of Assembly Bill No. 1409 occurred during a public hearing on this bill conducted by the Senate State Government and Federal and Interstate Relations Committee on April 15, 1974. A representative of the Associated Railroads of New Jersey, who spoke during the hearing, requested that an appeal provision similar to that contained in N.J.S.A. 48:2-31.2 be incorporated into the bill. However, the legislative history does not indicate whether this suggestion was ever considered by the Legislature. We establish herein the assessment enforcement procedure to be followed.
* * *
ISO contends that Rate Counsel has no statutory authority to intervene in and seek compensation for reviewing commercial automobile insurance rates filed under the Commercial Insurance Deregulation Act, N.J.S.A. 17:29AA-1 et seq. Pursuant to N.J.S.A. 17:29AA-5, rating organizations shall file commercial insurance rates, supplementary rate information and rate changes with the commissioner "not later than 30 days after becoming effective." (Emphasis supplied). N.J.S.A. 52:27E-18 authorizes Rate Counsel to "represent and protect the public interest ... in proceedings before and appeals from any State department ... regarding the fixing of a rate ... or charge. ..." (Emphasis supplied). N.J.S.A. 52:27E-19b provides that whenever Rate Counsel "represents the public interest in a proceeding initiated by an insurance company or nonprofit service plan ... for authority to increase or change the charges for insurance," Rate Counsel is entitled to "compensation and expenses of counsel, experts and assistants employed by the division in such proceeding...." (Emphasis supplied).
*120 ISO argues that "the mere submission of commercial automobile rate information after such rates are already in use, pursuant to the Deregulation Act, does not constitute a `proceeding,'" within the meaning of N.J.S.A. 52:27E-19b. It reasons that "even if a `proceeding' were initiated at some point, at no point was one initiated by ISO seeking the authority of the Commissioner of Insurance to increase or change the charges for insurance."
Under the Deregulation Act, the prior approval rate-making system was replaced with the "use and file" system provided in N.J.S.A. 17:29AA-5 to reduce the resources devoted by the Department of Insurance to the review of commercial rate filings and to eliminate the lag time between rate filings and rate approval. We are not convinced, however, that a commercial insurance rate "filing" is not a "proceeding ... regarding the fixing of a rate" simply because the rate is to be filed under N.J.S.A. 17:29AA-5 within thirty days after its effective date.
The rate is nonetheless subject to the scrutiny of the Commissioner and the Department of Insurance as, pursuant to N.J.S.A. 17:29AA-13, the Commissioner is authorized to conduct a hearing and order the elimination of such a rate if it is found to be "excessive, inadequate or unfairly discriminatory." See N.J.S.A. 17:29AA-10. Inasmuch as the Commissioner has the statutory authority to reject or accept a commercial insurance rate filing regardless of its effective date, we conclude that such a filing falls within the definition of a proceeding to fix rates as provided under N.J.S.A. 52:27E-18. However, under the clear statutory language Rate Counsel is only entitled to compensation for intervening in such a proceeding if the insurer or rating organization is seeking authority to "increase or change the charges for insurance." N.J.S.A. 52:27E-19b; (emphasis supplied). Whether such is the purpose of the proceeding is a question of fact.
We recognize that by reason of the exemption in N.J.S.A. 17:29AA-30, the Public Advocate is not authorized to request *121 a hearing pursuant to N.J.S.A. 17:29A-14 from the Commissioner in order to determine whether a commercial auto insurance rate filing would result in a change in rates and that therefore it could be argued, as urged by ISO, that Rate Counsel is likewise prohibited from intervening in commercial filings and seeking compensation under N.J.S.A. 52:27E-18 and 19b. We are convinced, however, that the purpose of the Deregulation Act is to streamline the rate filing process, and not to insulate commercial filers from state agencies representing the public interest. We find no valid reason to bar Rate Counsel from intervening in commercial insurance rate filings or to bar the assessments of reasonable fees and expenses where the statutory requirements of N.J.S.A. 52:27E-19b have been met.
With respect to the particular "form" filings which Rate Counsel seeks compensation for reviewing, ISO argues that even if changes in physical forms could affect insurance rates, Rate Counsel was not entitled to intervene under N.J.S.A. 52:27E-18 because these filings did not attempt to "fix rates" as that statute requires. One such example of a disputed form filing is found in Rate Counsel File No. 84-H0-10. There, ISO filed "to introduce a new homeowners program of rate, rules and forms for homeowners policies issued by ISO member companies in New Jersey." This filing sought to broaden certain coverages, create new exclusions and increase the standard deductible. Rate Counsel intervened and eventually recommended that this filing be approved with certain conditions. The Department of Insurance formally approved this filing under the conditions requested by Rate Counsel. Thereafter, ISO requested the Department of Insurance to reconsider its decision in this matter; however, the order was affirmed with minor modifications.
We believe that N.J.S.A. 52:27E-18 must be liberally construed in favor of allowing Rate Counsel to intervene in filings which may not directly "fix" rates but may nevertheless *122 have significant impact upon the premium rates to be charged. Although N.J.S.A. 52:17E-18 initially states that the Division of Rate Counsel shall represent the public interest in proceedings regarding the "fixing" of a rate or charge, the statute further provides that:
Rate Counsel may initiate any such proceedings when the director determines that a discontinuance or change in a ... rate, toll, fare or charge for a product or service is in the public interest. [Emphasis supplied].
Thus, reading the statute as a whole, we find that Rate Counsel can initiate a proceeding when it determines that the change of a rate or charge is in the public interest. Therefore, Rate Counsel should also be able to intervene in a form filing if it would change the actual premium charge for the product as is the case where the deductibles are altered. We find it appropriate for Rate Counsel to have initiated discovery procedures and to have intervened in the filing of the aforesaid homeowner's form changes in order to determine whether this form would change the charges of insurance. As the Public Advocate observes in its brief "[e]ven if ISO could prove that some of the forms filings at issue do not financially affect the rate payers, there is no method of determining that without a comprehensive review of the filing." Rate Counsel's intervention in the form filings in question was neither beyond its authority nor contrary to the spirit and letter of N.J.S.A. 52:27E-18.
Although Rate Counsel should be permitted to intervene in such form filings pursuant to N.J.S.A. 52:27E-18, the question of whether such a filing is a proceeding initiated by the rating organization for authority to increase or change charges of insurance, thereby entitling Rate Counsel to compensation under N.J.S.A. 52:27E-19, is another question. When such a question is raised it requires the particular form filing to be reviewed and a factual determination to be made as to whether the form being filed would result in a change in the charge for insurance.
*123 Regarding State Farm's contention that it did not "initiate" any proceedings for authority to increase or change the charges for insurance within the meaning of N.J.S.A. 52:27E-19b, we note that the bills which are the subject of the instant appeal arose as a result of four separate proceedings allegedly "initiated" by State Farm. Several of the bills reflected fees and expenses incurred by Rate Counsel in a proceeding in which State Farm proposed changes in the manner in which it determined rates for different driver classes and geographic territories, and the method by which State Farm distributed company expenses among policyholders. The filing was made in order to comply with recent legislative enactments. State Farm maintains that since the filing was compelled by operation of a state statute which altered the manner in which State Farm allocated the premiums among its insureds, it cannot be found to have "initiated" this proceeding.
There are no disputed factual issues with regard to File No. 84-PPA-11. Rather, the issue is solely legal, i.e., whether an insurance company which files a revised rate schedule with the Department of Insurance that would change the charges for insurance can be said to have "initiated" the proceeding when the filing was made in order to comply with legislative enactments. There is nothing contained within N.J.S.A. 52:27E-19b that would exempt an insurance company which makes a mandated filing from the obligation to pay Rate Counsel's compensation and expenses. We conclude that such filings are clearly encompassed within the terms of the statute and that the bills are enforceable.
As previously discussed, one of the State Farm disputed bills reflects fees and expenses incurred by Rate Counsel in a second proceeding, referred to as Rate Counsel File No. 79-I-153, otherwise known as the Consolidated Automobile Classification Proceeding. This proceeding arose as a result of State Farm's submission of a filing to the Department of Insurance in April 1978, seeking a rate increase for its private passenger automobile insurance policyholders. State Farm proposed a distribution *124 scheme which allocated the premium to individual policyholders based in part on the age, sex, marital status and geographic location of the driver. The Commissioner of Insurance issued an order severing various rate classification issues presented in State Farm's filing and consolidated them with other insurance filers' pending rate filings that raised similar issues. State Farm paid the fees and expenses incurred by Rate Counsel during the hearing before the Department of Insurance, but refused to pay a bill in the amount of $6,556.87, which represented State Farm's share of the fees and expenses incurred by Rate Counsel in connection with the appeal from the Commissioner's order.
State Farm contends it did not seek to change its basic methodology for determining an individual insured's premium. After approving a rate increase, the Commissioner ordered State Farm, along with several other insurers, to participate in certain hearings to determine whether the traditional methods utilized to charge individual insureds were proper. State Farm asserts it was not obligated to pay Rate Counsel's bill since it did not initiate these hearings. However, State Farm agreed in a "Memorandum of Understanding" to reimburse Rate Counsel for its proportionate share of past and future expenses incurred in connection with the consolidated automobile classification proceeding, thereby waiving its argument that it did not initiate the proceeding.
The fact that the disputed bill represents expenses incurred by Rate Counsel during the appellate process does not relieve State Farm of its obligation to pay this bill. N.J.S.A. 52:27E-18 mandates that Rate Counsel represent the public interest not only in proceedings before state departments and commissions, but also in appeals from the decisions of these bodies. Rate Counsel's right to be paid when a utility appeals from such a decision was resolved in Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956). There, interpreting N.J.S.A. 48:2-31.1, the predecessor to N.J.S.A. 52:27E-19b, the Supreme *125 Court held that a utility may be assessed for the fees and expenses incurred by Rate Counsel in representing the public interest in an appeal from an order entered by the Board of Public Utility Commissioners. 21 N.J. at 382. The Court observed that the statute must be interpreted to give effect to the legislative purpose and that "it would be contrary to all reason ... to read the act as terminating the services of the rate counsel the moment the Board determines the issue and thereby to exclude the same public representation on a judicial review of the Board's action, or to place the burden of the continued or substitute public representation upon the general public." Id. at 378-79.
Several bills to State Farm reflect fees and expenses incurred by Rate Counsel in a third proceeding, referred to as File No. 84-PPA-68. State Farm filed revised rate schedules with the Department of Insurance in April 1984, in order to comply with the Tort Threshold Law. We conclude that this proceeding was initiated by State Farm's filing of revised rate schedules with the Department of Insurance. It is clear that the filing is encompassed within the meaning of N.J.S.A. 52:27E-19b, even though it was required to comply with the Tort Threshold Law.
One of the bills, dated November 19, 1987, relates to fees and expenses incurred by Rate Counsel in a fourth proceeding, referred to as File No. 88-PPA-2. We are unable from the record to determine the nature of this proceeding so as to determine whether this proceeding was "initiated" by State Farm. This issue should be resolved by the Law Division upon remand in accordance with the guidelines established herein.
An issue is also raised with respect to the authority of the Public Advocate to recoup its legal expenses incurred to recover its assessment through the related summary enforcement proceedings. Rate Counsel argues that since it is entitled to compensation for fees and expenses incurred "in a proceeding initiated ... for authority to increase or change the charges *126 for insurance," N.J.S.A. 52:27E-19b, those proceedings would necessarily entail all attendant judicial efforts to collect such statutory fees and expenses.
R. 4:42-9(a) states the general rule that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, ..." but permits an award of counsel fees "(8) in all cases where counsel fees are permitted by statute." The original purpose of this rule was to eliminate the abuses of the pre-1948 chancery practice of granting what were felt to be excessive fees to certain members of the Bar. See Satellite Gateway Com. v. Musi Dining Car Co., 110 N.J. 280, 285 (1988). We see no danger of abuse here.
In Alexander v. N.J. Power & Light Co., supra, our Supreme Court construed N.J.S.A. 48:2-31.1, the predecessor to the statute in question, and held that the cost of Rate Counsel's services on the appeal was assessable against the public utility. The Court observed that the statute must be given a reasonable construction so as to serve the legislative purpose. 21 N.J. at 378. That same legislative purpose is present under the successor statute and compels the conclusion that a supplemental proceeding in another court to obtain payment of the original assessment is authorized. Cf. the following civil rights legislation cases: Balark v. Curtin, 655 F.2d 798 (7th Cir.1981); Bond v. Stanton, 630 F.2d 1231 (7th Cir.1980); Gagne v. Maher, 594 F.2d 336 (2d Cir.1979), aff'd 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Bung's Bar & Grille, Inc. v. Florence Tp., 206 N.J. Super. 432 (Law Div. 1985); Council Enterprises, Inc. v. Atlantic City, 200 N.J. Super. 431 (Law Div. 1984).
We are satisfied that if it is determined that Rate Counsel was statutorily entitled to fees and expenses pursuant to N.J.S.A. 52:27E-19b, then Rate Counsel should also be compensated for its efforts in attempting to collect upon those bills. Rate Counsel's ability to provide quality legal representation on behalf of the public interest in proceedings initiated by insurance *127 companies and rating organizations pursuant to N.J.S.A. 52:27E-19b is dependent upon the assessments it is entitled to make against those entities. However, Rate Counsel will not be fully compensated and the purpose of N.J.S.A. 52:27E-19b will be undermined, as the original fees and costs awarded will be diluted by the uncompensated collection costs.
NJMMRA maintains that its request to the Commissioner to establish additional premium surcharges for medical malpractice liability insurance policies does not constitute "a proceeding initiated by an insurance company or nonprofit service plan subject to Title 17 of the Revised Statutes ... for authority to increase or change the charges for insurance ..." pursuant to N.J.S.A. 52:27E-19b and that it is not required to pay Rate Counsel's assessments of fees and expenses. The Law Division judge transferred the matter to this court pursuant to R. 1:13-4(a) without reaching the merits of this argument.
The determination of whether Rate Counsel had the authority to make these assessments is strictly a matter of statutory interpretation and does not involve disputed facts. NJMMRA maintains that under N.J.S.A. 52:27E-19b, the assessments are invalid because NJMMRA did not initiate a proceeding to increase or change its premium charges.
NJMMRA advised the Commissioner that it had a severe deficit and was in danger of running out of funds to satisfy claims. It urged the Commissioner to establish additional premium surcharges for medical malpractice liability insurance policies pursuant to N.J.S.A. 17:30D-10. This statute directs the Commissioner to establish reasonable provisions through additional premium charges for policies of the various categories and subcategories of medical malpractice liability insurance for the purpose of providing monies necessary to establish the recovery fund in an amount sufficient to meet the requirements of the Medical Malpractice Liability Insurance Act. The purpose of the recovery fund is to provide a financial backup for *128 NJMMRA's plan of operation and to provide reimbursement for any deficit sustained in its operation. N.J.S.A. 17:30D-9.
NJMMRA argues that its letters to, and meeting with, the Commissioner did not constitute a "proceeding" within the meaning of N.J.S.A. 52:27E-19b since no hearing was conducted. The term "proceeding" has been defined as
a particular step or series of steps, adopted for accomplishing something. This is the dictionary definition as well as the meaning of the term in common parlance. Proceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion. [Rice v. United States, 356 F.2d 709, 712 (8th Cir.1966); footnote omitted].
The word "proceeding" is a term of broad scope, encompassing both the investigative and adjudicative functions of an administrative agency. United States v. Browning, Inc., 572 F.2d 720, 724 (10th Cir.), cert. den. 439 U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978); Banach v. State Commission On Human Relations, 277 Md. 502, 356 A.2d 242, 247 (Md. 1976). It imports a broader scope than the term "hearing." Soley v. State Commission On Human Relations, 277 Md. 521, 356 A.2d 254, 257 (Md. 1976).
NJMMRA's letter initiated a process before the Commissioner to determine the appropriateness of a surcharge. NJMMRA provided the Commissioner with actuarial reports and met with the Commissioner to review its deficit position so that the Commissioner could establish appropriate surcharge levels. The Department of Insurance directed NJMMRA to file with Rate Counsel all documents submitted in connection with the application for the fixing of a surcharge. Following Rate Counsel's intervention, conferences and discovery procedures were conducted and Rate Counsel submitted a report to the Department of Insurance recommending a denial of the request for the imposition of a surcharge. We cannot characterize this process as anything less than a "proceeding."
NJMMRA also asserts that its action did not constitute a request for authorization to increase its charges for insurance. *129 It argues that it had no insureds to charge premiums to since it was deactivated at the time. It further maintains that its letters merely constituted a recommendation to the Commissioner that he exercise his exclusive authority under N.J.S.A. 17:30D-10 to establish additional premium charges.
In 1982, the Commissioner deactivated NJMMRA as a provider of medical malpractice liability insurance. However, even after its deactivation, it remained obligated on the coverage which it reinsured or had already written. Although NJMMRA had no insureds to charge premiums to after its deactivation, it was subject to being reactivated by the Commissioner at any time that he might make a finding based upon facts developed at a hearing that medical malpractice liability insurance was not readily available for any category or subcategory of insureds to which the Medical Malpractice Liability Insurance Act applied. N.J.S.A. 17:30D-8a. In any event, all that N.J.S.A. 52:27E-19b requires before Rate Counsel may make an assessment of fees and expenses for its representation of the public interest is that a proceeding be initiated by an insurance company or nonprofit service plan "for authority to increase or change the charges for insurance."
We are satisfied that the contested assessment must be enforced in order to advance the underlying purpose of the legislation. Our Supreme Court, in construing N.J.S.A. 48:2-31.1, the predecessor to N.J.S.A. 52:27E-19b, rejected a technical reading of the statute. In assessing a claim for reimbursement under the earlier statute, the Court stated:
The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law.... The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual *130 denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. [Citation omitted]. It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. [Citation omitted]. [Alexander v. N.J. Power & Light Co., supra, 21 N.J. at 378-79].

ASSESSMENT ENFORCEMENT PROCEDURE
R. 4:67-6 establishes summary proceedings to enforce agency orders. It "is applicable to all actions by a state administrative agency ... brought to enforce a written order or determination entered by it, whether final or interlocutory, and whether the order to be enforced requires the payment of money or imposes a non-monetary requirement...." R. 4:67-6(a). Such actions "shall be brought in accordance with R. 4:67 unless an applicable statute requires a plenary action in a specific matter. If the order sought to be enforced requires only the payment of money, it may be brought in the Superior Court, Law Division, or in any other court having statutory jurisdiction over the specific matter." R. 4:67-6(b)(1). R. 4:67-6(c)(3) provides that "the validity of an agency order shall not be justiciable in an enforcement proceeding."
Preliminarily it must be determined whether Rate Counsel's assessment of fees and expenses constitutes "a written order or determination" subject to summary enforcement within the meaning of R. 4:67-6(a). Appellants direct our attention to the comment following R. 4:67-6 which states that "with respect to applicability, the distinction must be drawn between initial actions by agencies instituted in a court of competent jurisdiction to enforce a statute or regulation and an action brought by an agency to enforce an order already entered by it. This rule applies only to the latter." Pressler, Current N.J. Court Rules, Comment R. 4:67-6. We are satisfied that the Department of Public Advocate instituted its Law *131 Division action to enforce the assessment of fees and expenses already entered by it within the contemplation of R. 4:67-6(a).
As a consequence of the Legislature's enactment of N.J.S.A. 52:27E-19c requiring that the assessment is to be paid within 30 days without any interim proceeding, we must classify the assessment as a "determination" within the meaning of R. 4:67-6(a). Therefore, the Public Advocate's assessment of fees and expenses is the proper subject of a summary enforcement action since the assessment constitutes a determination entered by a state administrative agency.
Although a summary action may be tried on the pleadings and affidavits, evidence must be received as to those matters which may be genuinely in issue. R. 4:67-5. However, R. 4:67-5 is not applicable with regard to summary enforcement of state administrative agency determinations since R. 4:67-6(c)(3) provides that "the validity of an agency order shall not be justiciable in an enforcement proceeding." Thus, review of the merits of an agency order must ordinarily be sought in the Appellate Division pursuant to R. 2:2-3(a)(2). Pressler, supra, Comment R. 4:67-6. Thus, the Law Division granted the Public Advocate's motions for summary enforcement without addressing the merits of the challenges to the validity and reasonableness of the assessments.
Although R. 4:67-6(c)(3) provides that "the validity of an agency order shall not be justiciable in an enforcement proceeding," we must point out that "any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." R. 1:1-2. The relaxation provision of R. 1:1-2 has been applied in matters affecting the public interest and where speedy disposition was required. Pressler, supra, Comment R. 1:1-2. Thus, in Bd. of Ed. of Elizabeth v. City Coun. of Elizabeth, 55 N.J. 501, 505 (1970), the Supreme Court relaxed the requirement of exhaustion of administrative relief prescribed by R. 2:2-3(a) in order to permit a direct appeal to the Supreme Court from a decision of *132 the Commissioner of Education in view of the urgency and importance of the matter.
We hold that where there are factual issues raised concerning the assessment for Rate Counsel's representation of the public interest, R. 1:1-2 should be invoked to relax the requirement of R. 4:67-6(c)(3) which prohibits the justiciability of the validity of an agency order in an enforcement proceeding. The Appellate Division is not a convenient forum to make a determination as to the reasonableness of the assessments of fees and expenses charged in the absence of the creation of a record which is amenable to appellate review. The Law Division may relax R. 4:67-6(c)(3), and receive evidence as to those aspects of the assessment which are genuinely in issue, whether it be the underlying basis for the assessment or its reasonableness. R. 4:67-5. This will also produce a speedier disposition in a matter affecting the public interest than would be achieved by transferring the matter to the Appellate Division.
R. 2:2-3(a)(2) was applied to transfer certain of these matters to this court since the Law Division found that jurisdiction resided exclusively with the Appellate Division. Under R. 2:2-3(a)(2) appeals may be taken as of right to the Appellate Division "to review final decisions or actions of any state administrative agency or officer...." This rule has been interpreted to mean that review of actions or inactions of state administrative agencies resides exclusively with the Appellate Division. Pascucci v. Vagott, 71 N.J. 40, 52 (1976); Central R.R. Co. v. Neeld, 26 N.J. 172, 184-85, cert. den. 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). However, an exception "is where the proposed administrative action has not been preceded by the creation in the agency of a record which is amenable to appellate review." Montclair Tp. v. Hughey, 222 N.J. Super. 441, 446 (App.Div. 1987). Where the disposition of a state agency action calls for the exercise of the gathering of evidence, the finding of facts and the application of legal conclusions, the matter may proceed in the trial court if there is *133 no agency record amenable to appellate review. Id. at 447-48.
In Montclair Tp. v. Hughey, we held that the matters in controversy were properly instituted in the Law and Chancery Divisions. 222 N.J. Super. at 446. We found that the case fell within an exception to R. 2:2-3(a)(2) since the proposed administrative action had not been preceded by the creation in the agency of a record which was amenable to appellate review. 222 N.J. Super. at 446, 448. We observed that "R. 2:2-3(a)(2) contemplates appellate review only of administrative actions of a quasi-judicial or quasi-legislative nature based on a record...." 222 N.J. Super. at 448. Since the disposition of the controversy required the exercise of trial court functions such as the gathering of evidence, finding of facts and the application of legal conclusions that are not the proper concerns of an appellate court, the court concluded that the matters were properly instituted in the Law and Chancery Divisions. Ibid. See also Schiavone Const. Co. v. Hackensack, 98 N.J. 258, 265-66 (1985); Pfleger v. N.J. State Highway Dept., 104 N.J. Super. 289 (App.Div. 1968).
In the case at bar, as will be true in similar matters of assessments for Rate Counsel's services, there was no proceeding conducted within the Department of the Public Advocate or the Department of Insurance, during which NJMMRA was given the opportunity to be heard with regard to the reasonableness of the statements of fees and expenses because there is no statutory provision for it.
The Public Advocate points to the fact that a presumption of reasonableness attaches to the action of an administrative agency and that the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious. Smith v. Ricci, 89 N.J. 514, 525, appeal dism. sub nom. Smith v. Brandt, 459 U.S. 962, 103 S.Ct. 286, 74 L.Ed.2d 272 (1982); Boyle v. Riti, 175 N.J. Super. 158, 166 (App.Div. 1980). Assuming that such a presumption is applicable *134 here, without being accorded the opportunity for a hearing, appellants are placed at a disadvantage in attempting to prove that the assessments were unreasonable.
Questions of fact regarding billing methodology are presented which require a hearing. The interests of justice can best be served by remanding the disputed assessment issues to the Law Division. The record on this point is not amenable to appellate review.
Absent a statutory provision for a hearing in the Department of Insurance or the Department of the Public Advocate with regard to the reasonableness of the statements of fees and expenses, we are without the ability to direct a remand to the administrative agency for the carrying out of such a proceeding. We are inclined to the view that such an enactment would be the most practical alternative since any insurance company which is assessed fees and expenses for Rate Counsel's representation of the public interest in a rate proceeding initiated by the company must have the right to challenge the reasonableness of the fees and there may be many such suits in the future. It would seem that the Department of Insurance would be in a more advantageous position than a court of law to evaluate the reasonableness of the time and effort expended by a participant, such as Rate Counsel, in a proceeding before the Department of Insurance. We invite the Legislature's consideration of this matter.
We affirm the authority of the Office of the Public Advocate in each of the Rate Counsel matters under appeal to have determined that the assessment of fees and expenses against appellants was appropriate, except as to Rate Counsel's File No. 88-PPA-2 pertaining to State Farm. We reverse only as to those orders and judgments of the Law Division which denied appellants an opportunity to be heard, after appropriate discovery, as to the reasonableness of the assessments and expenses imposed. We remand for further proceedings limited to the issue of reasonableness of those assessments which have *135 been disputed, and for resolution of the issue of whether State Farm initiated the proceeding which is the subject matter of Rate Counsel's File No. 88-PPA-2. With respect to ISO's direct appeals, we transfer those matters to the Law Division for hearings as to the reasonableness of the disputed assessments.