IN THE MATTER OF THE APPLICATION OF THE INSUR-ANCE RATING BOARD FOR APPROVAL OF INCREASES IN PRIVATE PASSENGER AUTOMOBILE LIABILITY RATES AND PHYSICAL DAMAGE INSURANCE RATES PROPOSED BY THE INSURANCE RATING BOARD.

INSURANCE RATING BOARD AS SUCCESSOR IN INTEREST OF NATIONAL AUTOMOBILE UNDERWRITERS AS-SOCIATION AND NATIONAL BUREAU OF CASUALTY UNDERWRITERS, APPELLANT.

Argued March 31 and April 1, 1969—Decided November 28, 1969.

Mr. *Stephen B. Wiley* argued the cause for appellant (*Mr. Thomas D. Hogan,* on the brief).

Mr. *Franklin J. Marryott,* of the Massachusetts bar, argued the cause for Mutual Insurance Rating Bureau, *amicus curiae* (*Mr. John Robert Heher* and *Messers. Smith, Stratton, Wise* and *Heher,* attorneys).

Mr. *Isadore Glauberman,* Special Counsel appointed by the Attorney General to represent the Public, and *Mr. Sheldon A. Weiss* argued the cause for respondent.

Mr. *E. Robert Levy,* Deputy Attorney General, argued the cause for respondent Commissioner of Banking and Insurance (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

PER CURIAM. The Commissioner of Banking and Insurance denied approval of rate filings for increases for (1) automobile liability insurance and (2) collision and other physical damage coverage. We certified the appeal before argument in the Appellate Division.

After a consideration of the briefs and the argument before us, the matter remained obscure, especially as to the precise findings of the Commissioner. Shortly after the argument we called for a conference in the hope that light would be shed. At the meeting the parties tentatively agreed that a remand to the Commissioner would be desirable, with the possibility that a new filing might be made. During the sum-

mer recess we were advised that the parties were unable to crystallize the agreement.

There were two subjects upon which we wanted more information. One was the amount an insurer should receive as a reasonable profit. The parties used a figure of five percent of premiums for underwriting profit and contingencies but quarrelled over whether there should be deducted the earnings from investments of (a) the reserve for unearned premiums and (b) the reserve for losses. We wanted to know the origin of the five percent figure and its justification, as to which the record was silent. The second subject upon which we sought light was still more basic to our decision, to wit, the meaning of the Commissioner's determination. We could not comprehend some of the findings nor how the findings led to the result. In this regard, we could not tell whether the carriers were found to be entitled to something less than what they sought but failed completely because the Commissioner conceived they had to succeed in full or not at all.

After the breakdown of the proposal for a remand, the Commissioner asked that we decide the proper rate of profit upon the basis of literature the parties might submit, and such materials have been submitted sporadically on behalf of the Commissioner. We heretofore indicated our view that the proper course would be a hearing upon that subject before the Commissioner, findings by him, and thereupon a judicial review if one is sought. The carriers ask that we direct such a remand as to that subject.

As to the broader problem — an understanding of the Commissioner's finding — we called for a supplemental statement by him to the end that we might be able to settle some part of the controversy. That statement has not been submitted despite the passage of a considerable period of time. In the circumstances we think we should remand the matter to the Commissioner with directions that he proceed forthwith in accordance with this opinion.

There shall be a hearing with respect to what is a proper factor for profit and contingency. We will express some

views, tentative because of the absence of a record. They may later be challenged in the light of what emerges at the further hearing.

█ Special counsel (appointed to represent the public) refers to the earnings of these carriers from the investments of their total assets (other than current premiums). Those earnings do not appear to be relevant. This is evident as to the assets in excess of the assets required to do business and seems to be equally clear as to assets required to do business. The carrier is compensated for the risk it takes, and although the carrier must show its ability to pay if it loses, it would be foreign to the arrangement to expect the corporate investors to donate the income from their investment.

█ But as to earnings from the two reserve accounts mentioned above, for unearned premiums and for losses, we cannot conceive of any basis upon which they may be disregarded. Those earnings are part and parcel of what the carrier receives for the risk it takes. Indeed, if we correctly followed the oral argument, the carriers shifted from the proposition that such earnings are irrelevant, to the proposition that a fair return is five percent of premiums plus those earnings. We of course express no view upon what is the proper rate, for that is the subject of the hearing at the remand, but whatever the correct figure, those earnings cannot be ignored in reaching it.

We add that we agree with the Commissioner that he should take into account the experience with respect to excess limits coverage notwithstanding that the increases sought relate only to basic limits. The carriers say they were not alerted to the Commissioner's view in time to provide pertinent data. Unless reasons unknown to us militate against it, the Commissioner should provide an opportunity to do so on the remand.

We note, too, that with respect to certain projections which figured in the calculation of the profit, actual experi-

ence is now available. If appropriate, the Commissioner may call for, or permit, the substitution of known data.

One of the obscurities, to us, in the Commissioner's determination, relates to whether he found the carriers were entitled to an increase but less than what they sought. We emphasize that the Commissioner may not use an all-or-nothing approach, and that there must be granted whatever lesser relief the showing may warrant.

A new determination shall be made. It should be in terms revealing to a reviewing court. Judges cannot be expert in all the specialties involved in litigation. Needless to say, they cannot decide intelligently unless they understand what is before them. It would probably conduce to clarity if the Commissioner, after stating his findings, permitted the parties to express and argue their objections.

Further proceedings on this remand shall be held forthwith. We retain jurisdiction. The remand will not foreclose a new filing if the carriers so wish.

*For remandment*: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.