118 N.J. 336 (1990)
571 A.2d 957
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, RESPONDENT AND CROSS-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE PUBLIC ADVOCATE, APPELLANT AND CROSS-RESPONDENT. NEW JERSEY DEPARTMENT OF THE PUBLIC ADVOCATE, APPELLANT,
v.
NEW JERSEY MEDICAL MALPRACTICE REINSURANCE ASSOCIATION, RESPONDENT. INSURANCE SERVICES OFFICE, INC., RESPONDENT AND CROSS-APPELLANT,
v.
NEW JERSEY DEPARTMENT OF THE PUBLIC ADVOCATE, APPELLANT AND CROSS-RESPONDENT.
The Supreme Court of New Jersey.
Argued October 23, 1989.
Decided April 5, 1990.
*338 Richard E. Shapiro, Director, Division of Public Interest Advocacy, argued the cause for appellant and cross-respondent Department of the Public Advocate.
Thomas P. Weidner argued the cause for respondent and cross-appellant State Farm Mutual Automobile Insurance Company (Jamieson, Moore, Peskin & Spicer, attorneys; Thomas P. Weidner and Edward McCardell, on the briefs).
Elizabeth J. Sher argued the cause for respondent and cross-appellant Insurance Services Office, Inc. (Pitney, Hardin, Kipp & Szuch, attorneys; Elizabeth J. Sher, Clyde A. Szuch, and David M. Fabian, on the briefs).
Hugh P. Francis argued the cause for respondent New Jersey Medical Malpractice Reinsurance Association (Francis & Berry, attorneys; Evelyn Cadorin Farkas, on the brief).
*339 Elmer M. Matthews argued the cause for amicus curiae American Insurance Association.
The opinion of the Court was delivered by O'HERN, J.
One essential aspect of the business of insurance is to predict the statistical occurrence of certain risks of human or business activities. The recent San Francisco earthquake and Hurricane Hugo bring the issues into focus. Every consumer of insurance runs a certain statistical risk of loss. In essence, the consumers pool their chances to minimize catastrophic individual losses. They pay premiums to insurance companies to spread the risk. The business of insurance plainly affects the public. Hence insurance regulators supervise many, if not most, aspects of the business. In New Jersey, our Department of Insurance (DOI) fulfills the role of supervisor.
In order to assure that hearings concerning insurance rates before the DOI are fully adversarial, our Legislature has authorized the Division of Rate Counsel (hereafter Rate Counsel) in the Department of the Public Advocate to intervene in certain proceedings before DOI. N.J.S.A. 52:27E-18. The Department of the Public Advocate Act of 1974, L.1974, c. 27 (codified at N.J.S.A. 52:27E-1 to -47) (Advocate's Act) created that Department. The theory is that the Public Advocate's participation will produce a more complete record that will inform the agency's action, providing a form of oversight by an "ombudsman" for consumers. In certain proceedings, the Legislature has provided that the industry regulated will pay for the Public Advocate's activity. N.J.S.A. 52:27E-19.
N.J.S.A. 52:27E-18 authorizes the Division of Rate Counsel in the Department of the Public Advocate to intervene whenever an insurance company initiates a proceeding to change rates. In such a matter, the director need only submit a bill in order to be paid for those services. N.J.S.A. 52:27E-19.
The statute authorizing compensation states:
b. Whenever the Division of Rate Counsel represents the public interest in a proceeding initiated by an insurance company or nonprofit service plan subject to Title 17 of the Revised Statutes or Title 17B of the New Jersey Statutes for authority to increase or change the charges for insurance, the director shall send each insurer, nonprofit service plan or rating organization involved in such proceeding a statement of the compensation and expenses of counsel, experts and assistants employed by the division in such proceeding, together with an appropriate allocation to such insurance company, nonprofit service plan or rating organization of its fair share thereof. [N.J.S.A. 52:27E-19b.]
*340 The cases before us primarily concern the proper method and scope of review of charges submitted by Rate Counsel under N.J.S.A. 52:27E-19b (sometimes referred to herein simply as "19b"). Are those charges reviewable at all, and if so, by a court or by an administrative agency? And are they subject to the same review, let us say, as probate counsel's fees, which would require judicial analysis of factors such as time spent, skill exhibited, and standing of attorneys? See In re Estate of Bloomer, 43 N.J. Super. 414, 417, 129 A.2d 35 (App.Div.), certif. denied, 23 N.J. 667, 130 A.2d 428 (1957).
In addition, we must decide what constitute proceedings initiated by insurers to increase or change charges. We must also resolve whether the Division of Rate Counsel in the Department of the Public Advocate has any statutory rate review function to perform under N.J.S.A. 52:27E-19b in connection with deregulated lines of commercial insurance. A 1982 legislative initiative exempted certain commercial lines of insurance from any requirement that they seek from the Commissioner of Insurance prior approval to increase rates. Commercial Insurance Deregulation Act of 1982, L.1982, c. 114 (codified at N.J.S.A. 17:29AA-1 to -32). Finally, we must resolve whether necessary expenses incurred by the Public Advocate in recovering his charges are properly regarded as part of the proceedings covered under N.J.S.A. 52:27E-19b.
We affirm the judgment of the Appellate Division that the bills in these cases are subject to a limited form of review by the Law Division. However, this opinion establishes for future cases a new procedure before the Department of Insurance that we believe will more expeditiously and justly resolve further disputes about such bills. We also hold that the Advocate's Act covers commercial-line proceedings and forms filings and that Counsel is entitled to fees in recovering the bills.

I
The opinion of the Appellate Division, 227 N.J. Super. 99, 545 A.2d 823 (1988), sets forth the details of each of the cases fully. We need not repeat them here. The cases involved State Farm Mutual Automobile Insurance Company (State Farm), Insurance Services Office, Inc. (ISO), and New Jersey Medical Malpractice Reinsurance Association (Medical Malpractice).
*341 The cases began simply enough, almost like contract claims, in the Law Division. The first was the State Farm case. The Public Advocate's complaint involved a book account for approximately $27,000, covering various bills submitted to State Farm over a period of several years. The parties engaged in a routine exchange of discovery, but when State Farm served interrogatories on the Public Advocate demanding to know, among other things, the schools from which the Public Advocate's employees had graduated, the Public Advocate resisted the discovery. State Farm then moved to compel answers. The Public Advocate argued that there could be no discovery in the Law Division because the case really concerned not a complaint for damages, but enforcement of an administrative order, the validity of which could be reviewed only in the Appellate Division under Rule 2:2-3(a)(2) (allowing appeal as of right to review final agency actions). The Public Advocate's position understandably troubled the Law Division judge, who summarized the Public Advocate's arguments in this way:
On this motion, in effect they [the attorneys from the Department of the Public Advocate] are saying the information you're seeking is not relevant to any issue in the case, because you cannot raise the issue of reasonableness * * *.
Now, my concern is [whether] that position [is] constitutionally correct. Even if the statute said specifically, no defense can be raised as to the reasonableness of the charges made by the Public Advocate, the issue would still remain in my mind, "Is that constitutional?"
The Public Advocate replied that "our claim is certainly not that he [State Farm] has nowhere to challenge the fees, but rather if [State Farm] is going to launch a challenge to agency action, it must be in the Appellate Division," and "unless there's a certain level of arbitrariness made, then there is no right of discovery." The court responded:
That puts the cart before the horse. You don't know whether it's arbitrary until you have the discovery. And to say that you have to have a threshold showing of arbitrariness before you get discovery is just going around in circles.
Nonetheless, the Law Division later accepted the argument of the Public Advocate, stating, "I am going to deny [State *342 Farm's] Motion to Compel Discovery with respect to the interrogatories on the ground that the information sought is not relevant to these proceedings." The court recognized that only the Appellate Division could resolve the legal question of whether any factual issues raised in opposition to the bills could be litigated in a Law Division proceeding. State Farm took an interlocutory appeal from that discovery ruling but did not gain a stay of the Law Division action.
Some months later, the Public Advocate moved before another judge for summary disposition of its claims. According to that judge, the case had originally proceeded "as though it were not a State agency [suit] but rather as though it were a billing and this is a book account [for] money owed." In such a case State Farm could expect discovery. She observed, however, that by the time the parties had appeared before her, they had come to grips with the problem of the statute and its interpretation. She agreed with the Advocate that the action was more like an enforcement order under Rule 4:67, in which the Law Division has no authority to consider questions of the validity of the agency's order. R. 4:67-6(c)(3).
State Farm argued that it would be "bizarre" for the procedure to be as the Public Advocate argued. An insurer would have to "go to the Appellate Division to challenge the reasonableness of the bill and when you get to the Appellate Division, they can't look at a bill and say yes, that's reasonable or no, that's not reasonable."
The Law Division understood the circularity of the point, but concluded that "if there is a right to a hearing, where the hearing should be held and how it shall be conducted and what the burden of the State is on that billing is a matter for the Appellate Division to decide." Even though, in the court's view, the "horses [had] been changed in midstream" by the Public Advocate, now seeking a remedy under Rule 4:67, it ruled that only the Appellate Division could decide whether "there [is] a place to challenge the reasonableness of those bills, *343 where should that forum be to challenge the reasonableness of those bills," and "[w]ho should hear it." Declining to leave the issue in limbo, it said: "I'm going to make sure the Appellate Division is going to look at the issue. I'm going to grant the motion for summary proceeding on behalf of the Public Advocate to pay $32,222." (More bills had accrued since the complaint was filed.) The court refused to stay its judgment.
The Medical Malpractice case was next to be heard before another judge some three months later. Medical Malpractice, a reinsurance association established by statute, had advised the Commissioner of Insurance of an anticipated deficit and had been billed for Rate Counsel's review of its statistics. It argued that it had not initiated proceedings to change rates within the meaning of N.J.S.A. 52:27E-19b. Apparently familiar with the prior disposition of the State Farm case, the court suggested that the Public Advocate obtain a legislative change so that if the insurers "don't pay within the thirty days from the period [as defined] by the Legislature, that then upon their filing with the Clerk of the Superior Court [the bills] have the force of a judgment." It nonetheless felt bound to enter judgment on the amount claimed. The court did not, however, determine that Rule 4:67 governs jurisdiction to challenge reasonableness, as had the prior Law Division judge. In the court's view, the matter was simply a traditional allocation of jurisdiction. The agency could proceed before the Law Division to obtain summary enforcement or summary judgment, but the underlying challenges to the validity of the action, as well as all appeals from agency action (the billings), must be made in the Appellate Division. See R. 2:2-3(a)(2).
The third of the cases to be litigated was brought by ISO, an organization of insurers licensed in New Jersey under N.J.S.A. 17:29A-2, which consolidates data-collection and rating efforts. ISO prepares and files rates and policy forms with the Department of Insurance on behalf of its members. The ISO case appears to have been heard later in the same day by the same judge who heard the Medical Malpractice case. He found in the *344 ISO case four broad issues: (1) whether, under commercial deregulation, the bills were submitted for services rendered in connection with proceedings initiated to change charges; (2) whether the Public Advocate's services in connection with "forms filings" were billable; (3) whether a prior agreement to pay some of the claims was a simple contract question triable before him; and (4) whether ISO might consent to pay some of the bills. Again, the court ruled that questions of eligibility for payment are for the Appellate Division.
The court thus gave judgment for all the monies claimed by the Public Advocate except those claimed to be "due or not due because of this settlement agreement." As in the Medical Malpractice case, it referred to Rule 4:67-6. The court expected all other issues to be transferred to the Appellate Division. The parties later resolved the questions of what the settlement agreement covered.
This record clearly indicates that the choice of procedures understandably troubled the trial courts. As noted, Rule 4:67-6(c)(3) does not permit a trial court to inquire into the validity of an agency order. The Rule simply gives agency orders the force of law with all of the law's panoply of power to punish for contempt. See R. 1:10. Moreover, if the case is treated as a final agency action reviewable only in the Appellate Division under Rule 2:2-3, how can an appellate court sensibly review the collection of papers that makes up the statement of the record when the record consists essentially of numerous bills grouped under case names? The array of disputes is equally amorphous, ranging from nitpicking over duplicate bills to weeding out bills that were the subject of settlement between parties, from mixed questions of law and fact about whether the bills were incurred in connection with proceedings initiated to increase or change charges to legal questions about activity in connection with the deregulated lines of insurance.
After consolidating the three appeals, the Appellate Division affirmed in part and reversed in part. The court agreed *345 essentially with the Law Division judges that the basic questions about the validity of the Public Advocate's bills could be resolved only in the Appellate Division unless facts were in dispute. 227 N.J. Super. at 132, 545 A.2d 823. It thus affirmed the Law Division's judgments enforcing assessments of counsel fees and expenses. Id. at 134, 545 A.2d 823. It reversed only those judgments denying hearings on the reasonableness of assessments. Ibid. The court concluded that a commercial rate filing "falls within the definition of a proceeding to fix rates * * *." Id. at 120, 545 A.2d 823. It ruled as a matter of law that a forms filing allowed Rate Counsel's compensation whenever it might affect charges, but viewed the question of effect on charges as one of fact. Id. at 122, 545 A.2d 823. It regarded the remaining disputes over double billings, settlements, and claims of unreasonableness as questions of fact requiring a hearing to establish a record "amenable to appellate review." Id. at 134, 545 A.2d 823. The court also held that bills on bills are necessarily compensable to avoid undermining the purpose of the compensation statute. Id. at 126-27, 545 A.2d 823.
Seeking to work within current court rules, the Appellate Division held that when factual issues are raised, Rule 1:1-2 should be invoked to relax the Rule 4:67-6(c)(3) prohibition on justiciability of validity in an enforcement proceeding. Id. at 132, 545 A.2d 823. The court also held that Rule 2:2-3(a)(2) does not invariably require direct Appellate Division review of final administrative actions inasmuch as a hearing may be needed to create a sufficient record. Id. at 132-33, 545 A.2d 823. The court suggested that remand to the Department of Insurance would be more practical, but found no statutory authority for that direction and did not mention possible judicial authority. Id. at 134, 545 A.2d 823.
We granted the petition for certification of the Public Advocate and the cross-petitions of State Farm and ISO. 114 N.J. 479, 555 A.2d 605 (1989).

*346 II
Returning to the three issues set forth at the outset, we shall address first (a) the proper scope and method for review of the bills; next, (b) the circumstances under which the law entitles the Public Advocate to be reimbursed for his bills; and finally, (c) whether the Public Advocate is entitled to fees incurred in connection with collecting those bills.

A.

In those circumstances in which the Public Advocate is authorized to bill insurers for Rate Counsel's fees, what should be the scope of and method for review of those bills?
The ISO record serves best to illustrate these issues. Recall that in the ISO case the trial court referred to the Appellate Division all issues with respect to the validity of the bills. The Appellate Division resolved certain generic questions about whether the Advocate's Act covered deregulated rate filings and whether forms filings could be considered proceedings initiated for the purpose of obtaining rate relief. However, the court remanded the ISO case and the other cases to the Law Division to develop a factual record on which to predicate any further judgment on whether the fees of the Advocate were reasonable.
We affirm this disposition of these cases, but we believe that the statutory scheme contemplates a simpler, non-bifurcated process primarily managed by the Department of Insurance itself. We draw on the history that preceded the creation of the Division of Rate Counsel in the Department of the Public Advocate to reach this conclusion.
The amicus brief of the American Insurance Association recounts the evolution of public rate counsel's function. At common law, the Attorney General could intervene in suits involving the public interest. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 380, 122 A.2d 339 (1956). When the Attorney General exercised that right by appointing special *347 counsel to represent the public in insurance-rate proceedings, compensation was presumably from the Attorney General's own budget. See In re Insurance Rating Board, 55 N.J. 19, 20, 258 A.2d 892 (1969). Before enactment of the Advocate's Act, the only statutory provision for rate counsel compensation was for the Attorney General to appoint private counsel to represent the public interest in utility rate proceedings. L.1951, c. 357 (formerly codified at N.J.S.A. 48:2-31.1 to -31.3). By establishing the Division of Rate Counsel, the 1974 law brought rate counsel under the aegis of state government, N.J.S.A. 52:27E-16 to -17, and extended jurisdiction to other businesses and industries, including insurance companies, N.J.S.A. 52:27E-18. Unlike the current section providing for compensation of rate counsel, N.J.S.A. 52:27E-19, the predecessor statute, which dealt only with utilities, included a review mechanism. L.1951, c. 357 § 2(b) (formerly codified at N.J.S.A. 48:2-31.2). Under the former law, reasonableness challenges were heard by the Board of Public Utility Commissioners, whose final determination was subject to the same review as any final action of an administrative agency. Ibid.
Cases in which the Public Advocate's authority is present constitute the functional equivalent of a bill proffered by public interest counsel for services rendered in connection with a rate proceeding. The only difference now is that a department of state government performs the function of rate counsel. The question is, who should review the public agency's bills and how?
An easy answer would be to say that the bills are non-reviewable, that they constitute a form of administrative policy-making not subject to judicial review. See, e.g., Mount Laurel v. Department of the Pub. Advocate, 83 N.J. 522, 416 A.2d 886 (1980) (holding that because Public Advocate's function as enforcer of public interest is executive, discretionary power is broad); Borough of Morris Plains v. Department of the Pub. Advocate, 169 N.J. Super. 403, 404 A.2d 1244 (App.Div.), certif. denied, 81 N.J. 411, 408 A.2d 805 (1979) (allowing the Public *348 Advocate broad discretion to intervene in land use limitation when adhering to statutory guidelines). The agency discretion, however, is different in this context.
We believe that a better analogy is to those cases in which the Legislature has authorized fees and charges necessary to defray governmental costs. Such fees are not an open-ended grant of power to tax, but rather a well-circumscribed regulatory measure designed to defray the expenses of a particular governmental operation. See Public Serv. Elec. & Gas Co. v. Department of Envtl. Protection, 101 N.J. 95, 109, 501 A.2d 125 (1985). Such bills or expenses incurred in administering a program may be reviewed, but the standard is the familiar standard governing the review of agency action. The Public Advocate does not resist this standard, recognizing in its brief that "well-established principles of administrative law provide the appropriate contours of the right to challenge the Public Advocate's assessments."
Because the bills are reviewable, the next question is, who should exercise review power? In the utility setting the allowance of one-tenth of one percent of the utility's revenues in a calendar year, with certain other caps, produces a rough measure of adequacy. N.J.S.A. 52:27E-19a. There is no similar measure in the insurance field. Such measures simply do not fit in the case of rating organizations, which have no gross premium income.
Obviously, there is a reservoir of judicial power to review administrative action, but in these cases the usual form of judicial review of agency action is inappropriate. There are too many loose ends in the record, too many unanswered questions. Effective judicial review of agency action requires a developed record. Nor does Rule 4:67-6 appear to provide sufficient procedural guidance. The Appellate Division applied a relaxed form of Rule 4:67-6 to create a mechanism for challenge because N.J.S.A. 52:27E-19b is silent on that issue. The Supreme Court Committee on Civil Practice recommended the *349 rule, adopted July 22, 1983, to "bring uniformity and order to enforcement proceedings [of administrative agencies]." 111 N.J.L.J. 671 (1983). But its application here presents the Appellate Division with validity questions without the factual findings necessary for review.
In determining who should make such factual findings, "[w]e have always stressed the quest for principles of law `designed to assure that a controversy, or its most critical facets, will be resolved by the forum or body which, on a comparative scale, is in the best position by virtue of its statutory status, administrative competence and regulatory expertise to adjudicate the matter.'" In re Judges of Passaic County, 100 N.J. 352, 365, 495 A.2d 848 (1985) (quoting Hinfey v. Matawan Regional Bd. of Educ., 77 N.J. 514, 532, 391 A.2d 899 (1978)). After all, "[l]aw does not serve abstract goals. It serves the needs of parties to resolve disputes." Wunschel v. City of Jersey City, 96 N.J. 651, 664, 477 A.2d 329 (1984). Cf. Vanderbilt, "The Essentials of a Sound Judicial System," 48 Nw.U.L.Rev. 1 (1953) (emphasizing the pragmatic bases of fair trial). And "when the determination of [legal issues] must be preceded by `the taking of the necessary evidence and the making of the necessary factual findings,' it is best done by the administrative agency specifically equipped to inquire into the facts." Boss v. Rockland Elec. Co., 95 N.J. 33, 41, 468 A.2d 1055 (1983) (quoting Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 140, 179 A.2d 729 (1962)).
The question then is which agency is in the best position to develop the record. Having the agency itself, the Department of the Public Advocate, develop the record, seems reasonable. But an aspect of self-interest here requires consideration.
In Abbott v. Burke, 100 N.J. 269, 495 A.2d 376 (1985), when we were confronted with the necessity to create a record on which to premise judicial review of both a statutory scheme and the agency's effectuation of that scheme, we concluded that the mixed questions of law and fact would best be addressed first *350 by the agency primarily involved, the State Board of Education, but we required that an independent hearing officer, from the Office of Administrative Law, conduct the factual hearings. Id. at 301-03, 495 A.2d 376. As in the past, we molded procedure to the ends of justice. For example, in A.A. Mastrangelo, Inc. v. Department of Environmental Protection, 90 N.J. 666, 449 A.2d 516 (1982), in which the functions of two agencies of government intersected (as do to some extent here the functions of DOI and Public Advocate), we directed the agencies to conform their procedures to the needs of the statutory scheme. See also Balsley v. North Hunterdon Regional School District Bd. of Educ., 117 N.J. 434, 568 A.2d 895 (1990) (holding that the Division of Civil Rights, not the Commissioner of Education, has jurisdiction to award attorneys fees under the Law Against Discrimination); Hinfey v. Matawan Regional Bd. of Educ., 77 N.J. 514, 391 A.2d 899 (1978) (directing that the agency with the dominant interest and expertise hear a hybrid educational and civil rights issue). Here the agency in the best position to resolve the matter, by virtue of its statutory status and absence of self-interest, is the Department of Insurance.
As noted, the major encumbrance to following the usual pattern is that the Public Advocate has more than a regulatory interest in the outcome of the proceedings; it also has a financial interest in the outcome of the proceedings. Cf. Balsley, supra, 117 N.J. 434, 568 A.2d 895 (Division of Civil Rights not judging its own fees). Hence, we believe that the Office of Administrative Law should create the factual record for cases contesting the bills of the Public Advocate. Ideally any challenge to fees should follow closely the proceeding to change charges. Since such a proceeding would be within the ambit of the DOI, the Administrative Law Judge (ALJ) could then transmit factual findings and recommendations to the Department of Insurance. This would assure the court of the DOI's agency expertise on the mixed questions of law and fact presented in the matter, such as whether the proceedings should properly be *351 regarded as ones affecting the public interest by increasing insurance rates. Finally, because the DOI's determination is subject to judicial review, that exercise of judicial authority to review agency action will guarantee due process of law. This procedure would accord with prior practice, in which the utilities' regulatory agency established the reasonableness of public counsel's fees. L.1951, c. 357 § 2(b) (formerly codified at N.J.S.A. 48:2-31.2).[1]
Our concurring members agree with these principles for judicial administration of the disputed claims, but hesitate to impose them because of an absence of explicit statutory authority. But "[w]here a statute is silent or ambiguous, `it is our clear duty to choose that construction which will carry out the legislative intent of the statute as a whole * * *.'" Accountemps Division of Robert Half of Philadelphia, Inc. v. Birch Tree Group, 115 N.J. 614, 622, 560 A.2d 663 (1989) (quoting Horwitz v. Reichenstein, 15 N.J. 6, 8, 103 A.2d 881 (1954)). See K. Llewellyn, The Common Law Tradition-Deciding Appeals 374 (1960) ("If a statute is to make sense, it must be read in light of some assumed purpose."), quoted in Accountemps, supra, 115 N.J. at 623, 560 A.2d 663.
In the absence of the explicit language, then, we must ask ourselves what the Legislature would have intended. "As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation * * *." Exxon Corp. v. *352 Hunt, 97 N.J. 526, 534, 481 A.2d 271 (1984) (quoting Judge Learned Hand, concurring in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945)), modified, 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986).
We cannot assume that our Legislature would have intended that we use a jury-rigged procedure patched together from our existing rules. See Lindahl v. Office of Personnel Management, 470 U.S. 768, 799, 105 S.Ct. 1620, 1637, 84 L.Ed.2d 674, 697 (1985) ("[W]e cannot assume that Congress intended to create such a bizarre jurisdictional patchwork."). When a statute is ambiguous, a court must "draw upon `those commonsense assumptions that must be made in determining direction without a compass.'" Buckley v. Valeo, 424 U.S. 1, 77, 96 S.Ct. 612, 662, 46 L.Ed.2d 659, 721 (1976) (quoting Rosado v. Wyman, 397 U.S. 397, 412, 90 S.Ct. 1207, 1217, 25 L.Ed.2d 442, 455 (1970)).
We believe that the essential purposes and designs of the Advocate's Act contemplate a procedure that will resolve fee disputes in the simplest, most direct way practicable. Consistent with the presumed intent, we set forth the procedures herein that will achieve that end.
We believe that within this framework the arbitrary or capricious standard for review of any agency action will suffice. This shorthand expression will adequately encompass the appropriate measure for review of the Public Advocate's bills. There are three prongs to such a review. First, did the decision under review violate express or implied legislative policies? Here the inquiry is whether the Public Advocate exceeded his statutory authority in seeking compensation for intervention in the disputed proceedings or, put the other way, whether insurers initiated these proceedings for the purpose of raising or changing rates. Second, does the record have an adequate factual basis to sustain the Public Advocate's charges? Third, are the charges unreasonable under the circumstances of the *353 case, thus constituting a clear abuse of discretion? See Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963) (summarizing nature of judicial review of agency actions). This is the same standard that we used in the context of regulatory fees in Public Service Electric and Gas Co. v. Department of Environmental Protection, supra, 101 N.J. 95, 501 A.2d 125.
On this score, we add a word about the specifics of the review prompted by these cases. Obviously, the level of funding must encompass the overhead expenses attributable to Rate Counsel's activities. Without secretaries and office equipment and a supervisory lawyers' office, no government law office can function. Conversely, the insurance industry is not expected to fund the entire budget of the Public Advocate nor, indeed, activities not related to the 19b definition of compensated services. And, finally, any discovery must be tailored to the relevant issues. Before us, all parties agreed that there was neither intended nor implied in such review a challenge to management decisions of the Public Advocate or his decisions about how best to deploy his resources. Rather, the factual questions will primarily be whether the bills are for proceedings that never occurred, whether they are false or duplicate, and whether they meet the statutory standard.
We suspect that this abstract discussion will readily be digested by an ALJ, who will winnow out any such claims. Certainly the expertise of the ALJ and the agency itself will adequately inform any reviewing court of the nature of Rate Counsel's services, i.e., whether the services were reasonable in connection with proceedings initiated to change rates.

B.

In what circumstances is the Public Advocate entitled to be reimbursed under N.J.S.A. 52:27E-19b?
This inquiry requires us to resolve what constitutes a "proceeding initiated by an insurance company [or rating service] *354 * * * for authority to increase or change the charges for insurance." N.J.S.A. 52:27E-19b. There are two aspects to this question: (1) are any activities of "deregulated" lines subject to the Public Advocate's review; and (2) what activities of insurers fall within the statutory category?

1. Are the rate filings in the "deregulated" commercial lines of insurance to be regarded as proceedings initiated to change charges?
A literal reading of N.J.S.A. 52:27E-19b lends support to the insurers' argument that they did not initiate these proceedings to gain approval to increase or change rates. No approval was required. The theory of deregulation is that prior review of commercial-lines rate filings serves no public interest. Such lines may be described generically as "business insurance"  not sold to the ordinary individual consumer. Policies required by almost all New Jerseyans, such as personal automobile insurance and homeowner's insurance, so touch the lives of almost everyone that deregulation has not been extended to them. See N.J.S.A. 17:29AA-3a(9).
The argument is that because the Legislature deregulated commercial lines, insurers no longer need "initiate" a "proceeding" in order to "increase or change" rates (the language of 19b), and thus the Public Advocate has no statutory right to be paid for reviewing such actions. The deregulation system is called a "use and file" system. Filings must be made no later than thirty days after the rates become effective. N.J.S.A. 17:29AA-5.
The argument is challenging: if deregulation is to work, it must reduce bureaucratic red tape. But that argument assumes that the Legislature intended not only an initial right to "use and file" a rate, but also an insulation of the rate from the Public Advocate's public function. Of course the Legislature can divest the Public Advocate of any rate review function in *355 this area, but we do not believe that the legislative history of deregulation extends this far.
The broader question is whether the "use and file" aspect of deregulation of commercial lines insurance was intended to insulate all aspects of such insurance from the Public Advocate's review. On that score we need consider more than the provisions of N.J.S.A. 52:27E-19b. The Public Advocate's charter requires him to establish a Division of Rate Counsel, N.J.S.A. 52:27E-16, whose purpose is to "represent and protect the public interest * * *." N.J.S.A. 52:27E-18. Generally, the Division may intervene in "proceedings before and appeals from any State [agency] charged with the regulation or control of any [business] * * *," and may initiate such proceedings in the public interest. Ibid. Obviously, this authority under N.J.S.A. 52:27E-18 is not co-extensive with the Public Advocate's right to be reimbursed under N.J.S.A. 52:27E-19b (because not every proceeding is initiated by an insurer to change charges). But his mandate is clear. The only question is whether "use and file" action by insurers is a 19b proceeding.
Granted that the Public Advocate has no authority to suspend a deregulated rate, the filing of rates in the deregulated insurance area does not immunize the rates from all governmental review. Under the Commercial Insurance Deregulation Act of 1982, the Commissioner of Insurance may render ineffective any rate that he finds, after a hearing, not in compliance with standards of the Act. N.J.S.A. 17:29AA-13. The Act prescribes factors to be considered in making rates, N.J.S.A. 17:29AA-9, and prohibits rates that are "excessive, inadequate or unfairly discriminatory." N.J.S.A. 17:29AA-10. The Commissioner may, in addition, examine the business, affairs, and methods of any organization of insurers that assists in rate-making, and may charge the reasonable cost of that examination to the organization. N.J.S.A. 17:29AA-23. Hence, we believe, as did the Appellate Division, that rate filings under N.J.S.A. 17:29AA-5 may be regarded as proceedings initiated to gain approval of changed rates. An insurer may not raise rates *356 without some informational filings, even if review is after the fact. The Legislature has not shown disinterest in such rates, only that it believes that eliminating the requirement of prior approval will best serve the public interest. After all, the requirements for prior approval often resulted in lengthy delays that prompted the insurers to escalate their initial estimates, hoping to recoup for the regulatory delay. See Assembly Banking and Insurance Committee, Statement to Assembly Committee Substitute for Assembly Bill No. 813 (June 14, 1982). This does not mean that Rate Counsel is to become a "shadow commissioner." It may not initiate proceedings to suspend deregulated rates. Only the Commissioner can do that. N.J.S.A. 17:29AA-13. It would frustrate the Legislature's intent to exempt this line of risks from most red tape if the Public Advocate replicated the prior system. Still, we think he retains a limited role here. Within his ambit of authority, we are satisfied that the Legislature intended that his reasonable costs and expenses be reimbursable under 19b.

2. Are forms filings proceedings initiated to change charges within the meaning of N.J.S.A. 52:27E-19b?
One of the subtler questions concerning forms filings arises when an insurance company must file with the Commissioner a form of the insurance policy that it will employ for a risk or, more particularly, when it must amend its policies in specific response to rules and regulations adopted by the DOI. As to such forms filings an insurer can well assert that not only are they not submitted in order to gain approval to change rates, they may, in fact, result in no change in rates. Thus we believe that there is an area of the Commissioner's regulatory activity requiring action on the part of insurers that is not properly to be regarded as an effort by the insurer to change rates. On the other hand it is equally true that some prescribed filings should be so regarded. For example, changes in deductibles would usually have the effect of raising rates. Thus a mixed question of fact and law is often presented *357 concerning the effect of a forms filing and its inclusion within Rate Counsel's compensation statute. We think the Department of Insurance is best equipped to make this determination.

C.

Is the Public Advocate properly to be afforded compensation for his services rendered in collecting these bills?
Generally a government agency is presumed to have all incidental power necessary to achieve its legislative purpose. In re Suspension of Heller, 73 N.J. 292, 303, 374 A.2d 1191 (1977). The question here is whether the bills on bills are a necessary incident to the statutory authority for reimbursement. We agree with the Appellate Division that if Rate Counsel is entitled to fees and expenses under N.J.S.A. 52:27E-19b, the purpose of that section will be undermined if reimbursement is diluted by uncompensated collection costs. See 227 N.J. Super. at 126-27, 545 A.2d 823 (citing Alexander v. New Jersey Power & Light Co., supra, 21 N.J. 373, 122 A.2d 339, which held that the former statutory provision to pay expenses of rate counsel implied payment through final judicial review). Undoubtedly a record of substantial public benefit has been accomplished because of the Division of Rate Counsel's intervention in insurance proceedings. The Public Advocate reports that in 1988, for example, the Division of Rate Counsel was successful in helping to reduce or eliminate several proposed rate increases in basic auto insurance coverage. New Jersey Department of the Public Advocate and Office of the Public Defender, 1988 Annual Report 17-18 (May 31, 1989). Obviously if those insurance companies had not paid the bills, the Public Advocate could not administer his statutory function with respect to the insurance industry because the Legislature does not appropriate any funds for this purpose. Hence stonewalling by insurers could lead to a gradual starvation of this portion of the Public Advocate's budget. We doubt very much that the Legislature could have intended that result.

*358 III
To recapitulate, the reviewability of the charges of the Public Advocate for public representation in connection with insurance rate increases is ultimately a judicial function. To aid the court's review in future cases, the Department of Insurance shall conduct the necessary factual inquiry, referring contested cases to the Office of Administrative Law for development of the factual predicate to determine whether the bills are accurate and whether they were incurred in connection with proceedings initiated by insurers to change rates. The procedure will contemplate that an insurer or rating organization objecting to a statement or bill shall, within thirty days of receiving it, file with the Commissioner of Insurance a petition setting forth its objections and shall serve a copy on the Public Advocate. The Department of Insurance may adopt reasonable regulations requiring, for example, as a condition for filing such a petition, payment of any portion not in dispute, and allowing summary agency determination of that portion if the insurer and the Public Advocate cannot agree. Cf. L.1951, c. 357 § 2(b) (describing procedures of predecessor statute). In the absence of timely filing of such a petition the Public Advocate shall be entitled summarily to a judgment in its favor in the Law Division for the full amount billed. Review of any final determination of DOI on an ALJ's recommendation shall remain available in the Appellate Division. While the ultimate question of arbitrarily excessive fees remains for determination by the reviewing court, that court will benefit from DOI's views on whether the bills are unreasonably excessive. Deference remains due under this legislative scheme to the Public Advocate's decision about how best to deploy his resources. The management decisions are for the Public Advocate to make. We are satisfied that the Department of Insurance, as well as the Department of the Public Advocate, will be fully sensitive to the need for searching and independent rate reviews.
*359 On remand the parties may raise the limited factual challenges allowed by the Appellate Division's opinion. We leave undisturbed the Appellate Division's disposition of whether certain of the filings (for example File No. 84-PPA-68, a State Farm filing to comply with The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, L.1983, c. 362) were proceedings initiated by the insurer to change charges. We believe that in the future the expertise of the DOI would better inform a review of such mixed questions of law and fact.
Obviously these recommendations for agency action assume that this procedure will be the most effective way to resolve an administrative problem in the regulation of insurance. Every government agency charged with a statutory mission presumably has the necessary incidental powers to accomplish that mission. In re Suspension of Heller, supra, 73 N.J. at 303, 374 A.2d 1191. These disputes are plainly related to insurance regulation. We will always be guided primarily by policy determinations of a regulatory agency. Should the Department of Insurance advise us that these procedures are unworkable or inefficient, we will have no hesitance to revisit the issue.
Finally, we reemphasize that we are trying only to effectuate the Legislature's will. We have no special insight into what is the best way to regulate the insurance industry. The Legislature may choose to fund the Division of Rate Counsel through the regular budget process; it may choose to assess Rate Counsel's cost against the insurance industry; it may choose to deregulate entirely all or certain lines of insurance and let the market alone determine what the public shall pay for insurance. These are legislative choices, not judicial choices. We may err in our judgment that the Legislature intends the second form of public advocacy in certain insurance matters. The parties involved have sufficient access to the Legislature quickly to remedy any misjudgment on our part.
*360 We affirm the judgment of the Appellate Division. Future cases, however, should proceed as described.
STEIN, J., concurring.
Except in one respect, I join in the Court's thoughtful disposition of these appeals. I agree, as did the Appellate Division, 227 N.J. Super. 99, 134, 545 A.2d 823, that there should be an administrative mechanism available to review the reasonableness of compensation sought by the Division of Rate Counsel for services rendered as intervenor in the public interest before the Department of Insurance. I also agree with the Appellate Division, ibid., that the Department of Insurance would be ideally-suited to perform that function. As did the Appellate Division, I would "invite the Legislature's consideration of this matter." Ibid. Hence, I do not join that portion of the Court's opinion that imposes that review responsibility on the Department of Insurance, ante at 350-351, 571 A.2d at 964, in advance of any legislative action.
Justice CLIFFORD joins in this opinion.
Justices CLIFFORD and STEIN concurring in the result.
For affirmance  Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN  6.
For reversal  None.
NOTES
[1] We are aware of the absence of legislative history to indicate why a mechanism to challenge the reasonableness of the Public Advocate's bills was not included in the Department of the Public Advocate Act. Inclusion of an appeal provision similar to that in the former law was suggested during the public hearing held April 15, 1974, on Assembly Bill No. 1409, which as amended was later adopted as the Act, but there is no evidence that the Legislature ever considered this suggestion by a representative of the Associated Railroads of New Jersey. A previous bill that died in Committee, Assembly Bill No. 1297, did track the former law in providing for reasonableness challenges. In all, the legislative history fails to illuminate the legislative intent.