648 A.2d 513

BERGEN COUNTY UTILITIES AUTHORITY, PETITIONER–AP-PELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF THE PUBLIC ADVOCATE, DIVISION OF RATE COUNSEL, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 1994—Decided October 21, 1994.

Before Judges PETRELLA, HAVEY and CUFF.

*Sinisi, Van Dam & Sproviero,* attorneys for appellant (*Stephen P. Sinisi,* of counsel; *Scott G. Sproviero,* on the brief).

*Susan L. Reisner,* Former Acting Public Advocate, attorney for respondent (*Leora Mosston,* Former Deputy Public Advocate, on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The issue in this case is whether the Bergen County Utilities Authority (the BCUA) is responsible for fees and expenses assessed by the Division of Rate Counsel in the Department of the Public Advocate (Rate Counsel).[1]

The BCUA did not contest Rate Counsel's right to intervene in the rate-setting proceedings. Rather, it argues that Rate Counsel is not entitled to assess legal fees and expenses against it under *N.J.S.A.* 52:27E–19a because its March 1991 petition "sought *no change in services* whatsoever, and was expressly limited to approval of its proposed rate *reduction.*"

The Bergen County Board of Chosen Freeholders created the BCUA on March 23, 1978, to provide Bergen County certain water, sewer, and solid waste services. The BCUA has provided solid waste services and facilities since January 2, 1981. Its operations are subject to the New Jersey Solid Waste Manage-

---

[1] Although the Office of the Public Advocate was abolished by the Public Advocate Restructuring Act of 1994, *L.*1994, *c.* 58, effective June 29, 1994, the Division of Ratepayer Advocate was established within the Board of Public Utilities (BPU) pursuant to Reorganization Plan No. 001–1994 (dated May 5, 1994), effective on July 4, 1994. The Board of Regulatory Commissioners has again been designated as the BPU. The Reorganization Plan reconstituted the BPU "in, but not of," the Department of the Treasury. *See N.J. Const.* art. V, § IV, ¶ 1 (re necessity of allocation to one of the principal departments in state government). *See also N.J.S.A.* 52:27E–59.

ment Act (*N.J.S.A.* 13:1E–1 to –207) and certain solid waste management plans adopted for the county's district.

On February 11, 1991, the BCUA filed (as required by *N.J.S.A.* 48:13A–6 and *N.J.S.A.* 48:13A–6.2) an application with the Board of Public Utilities (the BPU) for a certificate of public convenience and necessity to operate a solid waste transfer station in North Arlington, New Jersey.[2] At the same time, the BCUA also filed its initial tariff or solid waste rate structure.

Thereafter, on May 7, 1991, an Assistant Deputy Public Advocate sent a letter to the BPU with a copy to the BCUA, to inform it that Rate Counsel planned to participate fully in the proceedings regarding the BCUA's application for a certificate of public convenience and permanent rate structure.

The BPU granted the BCUA's request for a certificate on August 16, 1991, and accepted its initial tariff or rate structure on an interim basis, subject to refund based upon further review. On December 24, 1991, the Director of Rate Counsel wrote the Executive Director of the BCUA concerning the same matter and requested him to add another Rate Counsel attorney to the service list.

According to the BCUA, the rate structure accepted by the BPU had been promulgated in January 1990 in accordance with the then applicable rate-setting protocol established by the Municipal and County Utilities Authorities Law, particularly *N.J.S.A.* 40:14B–23. The "interim" rate structure accepted had already been in effect for nearly nineteen months and remained in effect until May 15, 1993, according to the BCUA. The BCUA points out that during that period "no taxpayer, system user or governmental agency" challenged or contested the reasonableness of its rate structure.

---

[2] Prior to the November 16, 1990 effective date of *N.J.S.A.* 48:13A–6.2, BCUA was not "subject to the rate regulation and continuing jurisdiction" of the BPU or DEPE, as it had not been deemed a public utility. *N.J.S.A.* 48:13A–6.2a.

On March 10, 1993, the BCUA petitioned the Department of Environmental Protection and Energy (DEPE) under *N.J.S.A.* 48:13A–6.2b,[3] to decrease its solid waste service rate for municipal waste from $124 to $122 per ton. The BCUA asserts that, at the time, "[n]o change in services were contemplated." As of that time, according to Rate Counsel, neither the BPU nor DEPE had granted final approval of the BCUA's initial rate structure or services.

According to the BCUA, Rate Counsel moved, without objection, on March 29, 1993 to intervene (as of right) in the proceedings relating to BCUA's initial rate scheme and subsequent modification thereto. Rate Counsel states, however, that it "intervened on behalf of the public interest in all the proceedings subsequent to the BCUA's February 11, 1991, application." On May 4, 1993, Rate Counsel again notified the BCUA that it intended to participate in the application and petition process "insofar as changes in rates and/or services of the [BCUA] are at issue." Rate Counsel also advised the BCUA that it would be sending bills for its expenses pursuant to *N.J.S.A.* 52:27E–19a.

On May 14, 1993, the DEPE ordered the Office of Legal Affairs to transmit the BCUA's application for a certificate of public convenience and necessity, and petition for a decrease in rates, to the Office of Administrative Law (the OAL) for consolidation and a full hearing, as a contested case, on the setting of final rates and tariff design.

The DEPE also ordered the BCUA to submit by December 1, 1993, a copy of its 1994 solid waste budget and petition for solid waste disposal rates for solid waste generated in Bergen County to be effective March 1, 1994. In addition, the DEPE temporarily

---

[3] *N.J.S.A.* 48:13A–6.2b places responsibility on the owner or operator of every solid waste transfer station to file a revised tariff, or any proposed revisions to a lawfully negotiated contract for solid waste transfer operations, and obtain approval thereof from the BPU, whenever the owner or operator of a transfer station seeks to adjust the charges, rates, or fees charged for utilization of the transfer station.

adjusted the BCUA's initial rates and tariff design for solid waste disposal for the period between May 14, 1993 and February 28, 1994; and directed the OAL to address a $31 million accounting adjustment, which the BCUA had made of unappropriated retained earnings, relating to accounting for municipal solid waste landfill closure/post closure care costs. This entire matter is apparently still pending before the OAL.[4]

On June 3, 1993, the BCUA's attorney wrote the Director of Rate Counsel, disputing Rate Counsel's authority to assess legal expenses under *N.J.S.A.* 52:27E–19a against the BCUA. The BCUA took the position that because the proceedings presented "neither an *increase* in the rate, toll or fare, or charge of the BCUA, or discontinuance or change of any required service," the statute was not implicated.

On September 14, 1993, Rate Counsel issued a "Final Agency Determination" assessing legal fees and expenses (totaling $17,-516.75) against the BCUA for its representation of the public interest, from March to June 1993, in the rate proceedings.

After the BCUA filed its notice of appeal challenging the final determination assessing costs against it, Rate Counsel issued bills on December 14, 1993 (totaling $4,720 for legal services provided in June, July, and August 1993) and on January 28, 1994 (totaling $12,240.50 for legal services between August and November 1993), respectively.[5] The total amount assessed against the BCUA was $34,477.25. This amount does not exceed the maximum statutory assessment allowed ($72,699) pursuant to *N.J.S.A.* 52:27E–19a.

The Department of the Public Advocate Act of 1974, (the Act) *N.J.S.A.* 52:27E–1 to –47, established the Department of the Public Advocate. The enabling legislation gave the Public Advo-

---

[4] On June 9, 1993, the OAL sent a notice of the upcoming consolidated hearing to determine the "reasonableness of initial interim rate and subsequent interim rate."

[5] BCUA did not amend its appeal to include these two additional bills, nor has it paid either of them.

cate broad authority and discretion in determining whether to represent or refrain from representing the public interest in any proceeding. *See, e.g., N.J.S.A.* 52:27E–17, –18, –29, –31.

Rate Counsel was charged with representing and protecting "the public interest . . . in proceedings before and appeals from any State . . . agency . . . charged with regulation or control of any business, industry or utility regarding a requirement that the business, industry or utility provide a service or regarding the fixing of a rate, toll, fare or charge for a product or service." *N.J.S.A.* 52:27E–18.

The Act "provides for the payment of the fees and expenses incurred by Rate Counsel for such representation." *State Farm Mut. Auto. Ins. Co. v. State, Dept. of Public Advocate,* 227 *N.J.Super.* 99, 117, 545 *A.*2d 823 (App.Div.1988), *aff'd,* 118 *N.J.* 336, 571 *A.*2d 957 (1990). *N.J.S.A.* 52:27E–19a states in relevant part:

> Whenever the Division of Rate Counsel represents the public interest in a proceeding initiated by application of a business, industry or utility . . . for authority to increase the rate, toll, fare or charge charged by it for any product or service or in a *proceeding initiated by application of a business, industry or utility to discontinue or change any required service,* the Director of the Division of Rate Counsel may, except as otherwise provided herein, assess the business, industry or utility. . . .
>
> [emphasis added]

Case law interpreting and applying the quoted section is sparce. Both sides rely upon an unpublished opinion [6] of this court. That opinion is not precedential and we do not discuss it.

The legislative history is also scant. The Senate Statement to S. 1533, the statute's 1981 amendment, merely restates the statu-

---

[6] *Automated Modular Systems, Inc. v. State, Department of the Public Advocate,* Docket Nos. A–186–89T3 and A–2267–89, decided January 24, 1991, *certif. denied,* 126 *N.J.* 324, 598 *A.*2d 884 (1991). *R.* 1:36–3 clearly states that "[n]o unpublished opinion shall constitute precedent or be binding upon any court." The rule also states: "except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court."

tory language. A conditional veto message from the Governor stated that the "expressed purpose of [the amendment] was to allow the Division of Rate Counsel in the Public Advocate to assess utilities ... for each rate change application."

■ Hence, resort may be had to rules of statutory construction. We must consider not only the particular statute in question but also the entire legislative scheme of which it is a part. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987).

A reading of *N.J.S.A.* 52:27E–19a in conjunction with *N.J.S.A.* 52:27E–18 might well lead us to conclude that Rate Counsel's right to reimbursement should be co-extensive with the right to intervene. However, in *State Farm Mut. Auto. Ins. Co. v. State, Dept. of Public Advocate*, 118 *N.J.* 336, 571 *A.*2d 957 (1990), our Supreme Court said in interpreting *N.J.S.A.* 52:27E–19b dealing with insurance rates: "Obviously, this authority under *N.J.S.A.* 52:27E–18 is not co-extensive with the Public Advocate's right to be reimbursed under *N.J.S.A.* 52:27E–19b (because not every proceeding is initiated by an insurer to change charges)." *State Farm*, 118 *N.J.* at 355, 571 *A.*2d 957. Although *N.J.S.A.* 52:27E– 19b differs from *N.J.S.A.* 52:27E–19a, *State Farm* arguably forecloses a conclusion that the right to intervene under *N.J.S.A.* 52:27E–18 is co-extensive with the right to be reimbursed under *N.J.S.A.* 52:27E–19a. The language of *N.J.S.A.* 52:27E–19b is similar to *N.J.S.A.* 52:27E–19a, but not identical. In fact, the second phrase contained in *N.J.S.A.* 52:27E–19a dealing with "an application to 'change any required service' has no similar counterpart in *N.J.S.A.* 52:27E–19(b)." *Ibid.* Thus, the Supreme Court's observation in *State Farm, supra,* that *N.J.S.A.* 52:27E–18 is not co-extensive with *N.J.S.A.* 52:27E–19b does not resolve the matter.

■ We are satisfied that the BCUA should reimburse Rate Counsel for its participation and involvement in the interim rate-setting proceedings because it can fairly be said here that the proposed rate schedule, irrespective of whether the rates are

supposed to be increased or decreased, results in "a proceeding initiated by application of a business, industry or utility to ... change any required service...." *N.J.S.A.* 52:27E–19a.

Notwithstanding the fact that the BCUA's application to the BPU for its transfer station was not technically for an "increase" in its rates, nor a "change" of any required services, we conclude that as a "public utility" under *N.J.S.A.* 48:13A–6.2, its initial application was subject to scrutiny by Rate Counsel. Here, the BCUA was changing from disposing of solid waste at various landfills to a transfer station methodology. As such, it was a "change in required services" that Rate Counsel was properly allowed to examine in connection with its intervention to test the validity of the BCUA's operating expenses and charges which were the basis of the proposed tariffs.

We reject the BCUA's argument that absent a proposed rate increase or discontinuation or change in a required service Rate Counsel lacked authority to assess legal fees and expenses against it as a public utility for Rate Counsel's participation in the rate-setting proceedings.

The proper disposal of solid waste is a matter of public concern and the efficient disposal of solid waste at reasonable rates is a governmental function thoroughly imbued with the public interest. *N.J.S.A.* 13:1E–136.

Affirmed.